A. L. JACOBS v. THE STATE.

No. 5371.  Decided June 25, 1919.

</div>

**1.—Murder—Manslaughter—Charge of Court—Practice in District Court.**

Where the reading to the jury of an additional charge of the court, after the argument of counsel was concluded, was agreed to by defendant's counsel, a complaint of that fact in the motion for new trial was correctly overruled. Following Nowlin v. State, 76 Texas Crim. Rep., 480, 175 S. W. Rep., 1070.

**2.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, and a conviction of manslaughter, the evidence raised the issue of manslaughter, the court correctly charged the law on that offense, there was no reversible error.

**3.—Same—Manslaughter—Adequate Cause—Charge of Court.**

Where, upon trial of murder, the evidence showed that the killing was either murder or manslaughter, and the court charged on both offenses and also instructed the jury to acquit the defendant if he fired accidentally, there was no error; especially in that part of the charge where the court instructed the jury that unless they believed the killing was upon malice aforethought they would not convict him either of murder or of manslaughter, as this was more favorable than the facts warranted, nor was other objections just grounds of complaint in other portions of the court's charge, and the evidence supporting the conviction, there is no reversible error.

**4.—Same—Requested Charge.**

There was no error, under the facts in the instant case, in the court's refusal to submit a requested charge to the effect that if the defendant shot to stop or scare away a strange man, etc., that he would not be guilty.

**5.—Same—Re-hearing—Whole Charge Must Be Considered.**

This Court will look to the entire charge of the trial court in determining the deficiency of any particular portion therof, and applying this rule in the

instant case appellant's complaint to the court's charge on manslaughter, as being too restrictive is not well taken, but the same is applicable to the facts, and there is no reversible error.

Appeal from the District Court of Grayson. Tried below before the Hon. F. E. Wilcox.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the pentitentiary.

The opinion states the case.

*E. J. Smith* for appellant.—On question on court's charge on manslaughter.; Wilson v. State, 60 Texas Crim. Rep., 1; Jennings v. State, 60 id., 421; Jirou v. State, 53 id., 18; Akin v. State, 56 id., 324; Flynn v. Sate, 43 id., 407; Criner v. State, 41 Texas Crim. Rep., 290.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of court's charge on manslaughter; Burns v. State, 65 Texas Crim. Rep., 175, 145 S. W. Rep., 356; Eggellston v. State, 59 Texas Crim. Rep., 542; Wilson v. State, 71 id., 399; Thompson v. State, 77 Texas Crim. Rep., 140, 177 S. W. Rep., 503.

LATTIMORE, Judge.—The appellant was convicted in the District Court of Grayson County of the offense of manslaughter and his punishment fixed at two years confinement in the penitentiary. The facts sufficiently appears in the opinion.

The first complaint is of the fact that the trial court gave to the jury a charge defining ''malice aforethought'' after the argument was concluded. The bill of exceptions taken to this action of the court in giving said charge contains the following statement, as a part of the main bill prepared and presented by appellant to the court below, to-wit; ''The reading to the jury of this charge after the argument was concluded was agreed to by defendant's counsel.'' Under the authority of Nowlin v. State, 76 Texas Crim. Rep., 480, 175 S. W. Rep., 1070, the trial court could so correct his charge after the argument was concluded. The appellant, we think, is bound by the agreement of his counsel as to a matter of procedure. He can waive any right except that of trial by jury for a felony and could agree to the correction of the charge after the argument was made. Article 22, C. C. P.

Appellant's next contention is that the evidence did not raise the issue of manslaughter and the court erred in submitting the same, and further, that his charge on said issue was not correctly framed. As we may be clearly understood, it will be necessary to state certain parts of the testimony.

Appellant shot and killed Mrs. Joe Webster in Denison, Texas, about midnight on the third day of December, 1917, the shooting taking place in the yard of appellant and at a point in the rear of

his house between the back door of his house and the back gate of his yard, the shooting having been done with an automatic pistol. Mrs. Webster was a friend of appellant's wife and a frequent vistor to her home, a fact which was objectionable to appellant for some reason. On the night in question appellant came to his home about 11:30 and hearing the sound of music and dancing looked through the window and saw Mrs. Webster and a man he did not know, and whose identity was not fixed by any witness in the case. It seems that Mrs. Jacobs was playing the piano and Mrs. Webster and the stranger were dancing. Appellant did not come into his house but went to the Webster home about a block away and told Mr. Webster that his wife was at appellant's home, it was growing late and he wished Webster would come and get her. The two men returned to the Jacobs' home, going a round-about way because of appellant's suggestion that there was a street light near the front of his house and he did not want his wife to see them approaching. Appellant said nothing to Webster of the presence of the strange man in his home. When the two came back to appellant's house the witness Webster says he left appellant at the front door and he went and knocked on said door. It seems that appellant went at once to the rear door and was near there when the shooting took place. When Webster knocked no one answered, but in a short time he knocked again and Mrs. Jacobs came to the door and he asked if his wife was there and was informed by Mrs. Jacobs that his wife was not there. He insisted that she was, that he had heard her laugh and Mrs. Jacobs stepped to one side and the witness Webster went into the house. Shortly after coming inside a strange man passed him going out the front door. Webster walked on toward the rear of the house and in just a little while heard a shot. He ran out the front door and around the house to where his wife was lying on the ground, wounded. When he approached her she said, "My God, Jake has shot me." Appellant was standing near with a pistol in his hand but said nothing. Mrs. Jacobs testified that when Mr. Webster went back into the house that Mrs. Webster circled around the rooms and came running around to the front door and she let her out and that soon after she heard a shot and became much frightened herself and that she too ran away from the premises. Mr. Webster testified that appellant said nothing from the time he got to where the shooting took place until they were carrying his wife into the house at which time appellant said he was sorry and seemed concerned. The witness states that appellant was excited and seemed dumbfounded and amazed. After they got Mrs. Webster in the house a doctor was telephoned for and when he came appellant told him, according to the testimony of said physician, that Mrs. Webster was coming out of a closet fumbling with her clothes and he thought she was going to shoot him, and he fired. The physician said that appellant

was intensely excited. Mrs. Fuson testified that she lived next dood and was in bed and heard a shot, went to her window, saw a woman lying on the ground in the Jacobs' back yard and a man standing over her; heard the woman say: "Won't you have pity;" and heard the man say: "Who was the man who was in the house," and the woman said she did not know. For himself appellant testified that when he and Webster came back to his home he went to the rear door and Webster to the front; that he heard some one running in the house and a moment afterward some one came running around the house toward him; that he thought it was the man he saw in the house and that he pulled his pistol and fired; after he fired there was a scream and he saw he had shot a woman; that he stepped up to the person and asked her if she was hurt, and also asked her who was the man in the house. On cross-examination he said that if the man had come running around the house he would have killed him, but claimed that the shooting was accidental. Mrs. Pearson testified that after the shooting that she asked appellant how he came to do it and he said nothing. This witness said she asked the appellant to get some towels and he replied that he had not been to his home for a month and did not know where the things were.

It seems to us that this testimony made it imperative that the court charge on manslaughter. The presence of the strange man at midnight in the house in which was appellant's wife, the intense excitement of the appellant, the statements surrounding the shooting showing that appellant thought that he had shot the man who was in the house, all called for such a charge. There was no claim on the part of the appellant that he thought he was in danger of an attack or that the fleeing person was close to him or made any hostile demonstration before he shot. Aside from the testimony of the appellant, which was contradicted by his statements to the other witnesses, there was no evidence in the case raising any theory except that the killing was either murder or manslaughter. The court charged on murder, and manslaughter, and instructed the jury to acquit the appellant if he fired accidentally. We see no just ground or criticism of the court's charge on manslaughter. The same was favorable to the appellant in that part in which the jury were told that unless they believed the killing was upon malice aforethought they could not convict him either of murder or of manslaughter. The error, however, being in favor of the appellant is of no avail to him here.

Nor is there any just ground of complaint of the court's charge to the effect that if the jury should believe that the appellant unlawfully and intentionally fired with the specific purpose of killing the person approaching, believing such person the man whom he had seen in his house before, he would be guilty of

the same offense, if any, of which he would have been guilty if he had in fact killed said man.     Appellant was only convicted of manslaughter and it has been the uniform holding of this court that if the defendant would have been guilty of manslaughter had he killed the person intended, the intentional killing of another person in the attempt to carry out such intent, would be manslaughter.     See Sections 1901, Branch's An. P. C. and authorities cited.

Appellant asked a charge to the effect that if he shot to stop or scare away from the premises a man whom he had theretofore seen his house, that he would not be guilty.     There was no evidence upon which such hypothetical charge could be predicated and the court did not err in refusing same.

We have carefully examined the record, the various bills of exceptions and the able brief of appellant's counsel, but finding no reversible error the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING,

June 25, 1919.

LATTIMORE, JUDGE.—Appellant has filed a motion for rehearing in which this court is accused of wrongly quoting testimony, of making unjust deductions therefrom, and of making statements which are inaccurate and unfair to the appellant.

Condoning zeal for a client, which might find expression in more persuasive terms, and confessing to a sincere and strong desire to do right and be fair, this court has carefully gone over the former opinion and the matters complained of in the motion for rehearing.

It is insisted that we erred in holding the facts sufficient to sustain the verdict and judgment of manslaughter.     It is uncontroverted in this record that appellant shot and killed Mrs. Webster in the back yard of his own house near midnight on the date in question; that he came to his house shortly before the shooting and saw her, his wife and a strange man in a room together, his wife playing the piano and Mrs. Webster and the strange man dancing; that after going to Webster's home and bringing Mr. Webster back to appellant's home, that Webster went to the front door and appellant to the back door of his house; that at the time the appellant was armed with an automatic pistol; that shortly after taking his station at the back door appellant heard some one running inside the house.     He says: "I thught I would give them a little room to get out but they did not come out of the back door.     I stepped down off the back porch into the yard possibly

ten or twelve feet and was walking in the path toward my barn when on a sudden some one came towards me from around the house. . . . I thought it was the man in the house possibly. I turned around suddenly and called to him to stop and I pulled my pistol from my pocket and fired. Q. What was your purpose in pulling your pistol out? A. I did not know who it was coming up from behind me *and I got excited.* I did not intend to kill anybody. I heard a scream when the pistol fired, and I recognized it to be a woman instead of a man. I then went back to where they fell on the ground and asked them if I had hurt them. It was Mrs. Webster. I also asked who the man was in the house, and she wouldn't answer me." Later in his direct examination appellant said: "Just before and at the time I fired that shot I was excited. I did not intend to shoot Mrs. Webster. At the time the pistol was shot I did not know who it was there. I did not intend to fire the pistol, I presume it was accidentally fired." On cross-examination, explaining his purpose in going after Webster, after discovering the presence of Mrs. Webster and a strange man in his home, appellant said: "I was the proper man to get the man out, if he was there with my wife, *and I was going to take care of him,* but I first wanted Joe to come after his wife." Later in his cross-examination he said: "I remember the gun going off accidentally, and I remember her screams. There are different conditions in my mind—I was very much excited." Later he was asked this question: "If it had been a man instead of a woman out there which direction would you have gone?" To which question he answered: "I would have killed him." Then the following colloquy occurred between the attorney and witness: "Q. You would? A. I think so. I did not know it was not a man. I thought it was a man coming round the house. I presume that I would have killed the man."

Webster says when he got to where appellant and his wife were after the shooting "we were both excited, and he was in the condition I described awhile ago, dumb or amazed." Dr. Burch says of appellant when he got there after the shooting: "He was intensely excited."

We have given this much of the evidence to show beyond any sort of question the existence of a state of facts which not only made it imperative that the court should submit the theory of manslaughter, but which shows that the jury was acting upon abundant evidence in finding the appellant guilty of manslaughter. The court submitted murder, manslaughter, and accidental homicide, in addition to giving several special charges asked presenting affirmatively the theory of the defense. We think that the court's charge fully and fairly submitted every issue made by the evidence in the case. The essential element of manslaughter, the passion arising from an adequate cause, was present. The belief that a strange man was in his home, and that

it was that man who was coming round the house, appellant's surprise, dumbness, amazement, excitement when he found it was not that man, his avowed statement of his purpose to look after that man whom he had just seen in his house, his own testimony and that of others as to his excitement, make the question of manslaughter indisputable both in theory and in support of the verdict of the jury.

Complaint is again made that the court's charge on manslaughter was too restrictive and allowed the jury to consider only such provocation as arose at the time. Only part of the court's charge was excepted to, and appears in the bill of exceptions and as quoted in appellant's brief. This court will look to the entire charge as given by the court in determining the sufficiency of any particular portion thereof. In addition to that part of the charge on manslaughter to which said objection was made, the court further charged as follows:

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation (if any) to consider in connection therewith, all the facts and circumstances in evidence in the case, and if you find that, by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause (if any) producing such condition."

There was no question from the record that appellant believed the party who he says was approaching him at the time of the homicide was the man he had just seen in his house. The trial court did not err in telling the jury if appellant unlawfully and intentionally fired at the person approaching him with the specific intention of killing the man whom he had just prior thereto seen in his house, that he would be guilty of the same offense as if he had in fact shot said man. See Branch's Ann. P. C., Sec. 1901, and authorities cited.

Appellant complains that the trial court did not give his special charge, that if he shot to stop or scare the stranger he had just seen in his house, the jury should acquit. Appellant did not claim on the trial that he shot to scare anyone. He did testify he told the approaching party to stop, and at his own request the court charged the jury as follows:

"Gentlemen of the Jury: You are instructed in this case that the defendant must be tried from his standpoint and is to be judged as the facts and circumstances reasonably appeared to him: and if you believe and find from the evidence that on the night of December 3, 1917 and at the time Mrs. Webster was shot and killed, viewed from the defendant's standpoint and as he saw it, the strange man,

Mrs. Webster and his wife were guilty of improper relations with each other, the defendant would have the right while on his premises to stop the strange man running across his yard and make inquiry as to his presence there, and if at the time of the shooting, viewed from defendant's standpoint, it reasonably appeared to him that the deceased was the strange man that he had recently seen in his house, and upon seeing him he called to him to stop and drew his pistol, and in doing so was exercising ordinary care, and that the same was unintentionally and accidentally discharged and Mrs. Webster was shot, and if you should find that the defendant had no intention to shoot and kill said stranger and that he did not know that she was present, but thought she was the strange man, then you will acquit the defendant. ·

"Or if you have a reasonable doubt as to this fact, you will acquit him and return a verdict of not guilty.

E. J. Smith,

Attorney for defendant.

Presented to the Court before the main charge was read to the jury and given.

F. E. Wilcox,

Judge 59th Judicial District of Texas."

This we believe fully and fairly, and with reasonable justness and accuracy, disposes of the contentions made by the appellant in his motion for rehearing.

Regretting our inability to agree with him regarding the same, said motion for rehearing will be overruled.

*Overruled.*