Antonio CHIMNEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–098–CR.

Court of Appeals of Texas, Waco.

Nov. 3, 1999.

---

David S. Barron, Bryan, William F. Carter, Madisonville, for appellant.

Ray Montgomery, Dist. Atty., Centerville, Alfred Eugene Hernandez, Special Prosecution Unit, Huntsville, for appellee.

Before Chief Justice DAVIS Justice VANCE and Justice GRAY.

## O P I N I O N

REX D. DAVIS, Chief Justice.

The State indicted Antonio Chimney for capital murder. A jury convicted him of the lesser-included offense of murder and sentenced him to life imprisonment. *See* TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 1994). Chimney presents seven issues alleging the court erred by: (1) refusing to allow him to propound certain questions to the venire (two issues); (2) admitting evidence of his gang membership after the State failed to give adequate notice of its intent to offer such evidence; (3) overruling his motion to quash the indictment; (4) refusing to charge the jury on the law of transferred intent with respect to his claim of sudden passion; (5) failing to grant a mistrial after improper jury argument; and (6) admitting into evidence a cap worn by gang members because it was unfairly prejudicial.

## BACKGROUND

The indictment alleges in pertinent part that on or about November 25, 1995 Chimney did:

intentionally and knowingly cause the death of an individual, namely, CASSANDRA OWENS by SHOOTING HER WITH A FIREARM and did then and there cause the death of another individual, namely, TONJA BYRD by SHOOTING HER WITH A FIREARM and both murders were committed during the same criminal transaction.

The evidence reflects that Chimney and others went to a bar on the night in question. They became involved in an altercation and went outside. One of those accompanying Chimney began fighting with a Sterling Turner. Chimney retrieved a handgun from his car. He fired one shot into the air and then fired several shots into a crowd which had emerged from the bar.

Owens and Byrd were in the crowd. One of the shots hit Byrd in the chest, severing her aorta. She died at the scene. Another shot hit Owens in the upper chest and lodged near her spine. As a result, Owens experienced paralysis in both legs. She was transported to the Madisonville hospital and later transferred to a hospital in Bryan where she underwent surgery for her internal injuries. On December 5, Owen's physician released her from the hospital. Five days after her release, "she went into convulsions," started "shaking real bad," and had difficulty breathing. Her husband called 9–1–1, and an ambulance promptly arrived and transported her to the hospital. Owens suffered respiratory and cardiac arrest en route, and the emergency medical technicians could not revive her. Physicians in the emergency department could not resuscitate Owens, and she was pronounced dead within an hour after her arrival at the hospital.

The court charged the jury on capital murder and the lesser-included offenses of: (1) murder of Owens; (2) murder of Byrd; (3) manslaughter of Owens and Byrd; (4) manslaughter of Owens; and (5) manslaughter of Byrd. The jury found Chimney guilty of murdering only Byrd. After a two-day punishment phase, the jury sentenced Chimney to life imprisonment.

## MOTION TO QUASH

Chimney claims in his fourth issue that the court erred in overruling his motion to quash the indictment. He premised his motion on the State's failure to allege a culpable mental state in connection with the allegation of the Byrd mur-

der, the offense which elevated the Owens murder to a capital crime.

The Court of Criminal Appeals has held that a capital murder indictment need not allege a culpable mental state in connection with a second murder alleged to elevate the primary murder to the level of a capital murder. *Dinkins v. State,* 894 S.W.2d 330, 338–39 (Tex.Crim.App.1995). Chimney attempts to distinguish *Dinkins* on the basis that Dinkins was convicted of both the primary murder (which included an allegation of a culpable mental state) and the second murder (which did not), whereas the jury in Chimney's case acquitted him of the primary murder and convicted him of the second murder (which does not include an allegation of a culpable mental state).

According to Chimney, "[t]he logic of *Dinkins*" "is fatally flawed" because under that analysis a person who has intentionally or knowingly caused the death of the primary victim can be convicted of capital murder under such an indictment "if he intentionally, knowingly, recklessly or with criminal negligence, (or even by accident) causes the death of [the second] victim." However, this argument goes to the correctness of the court's charge, not the propriety of the indictment. Thus, it has no bearing on whether the court should have quashed the indictment. *See id.* at 339.[1]

As the Court stated in *Dinkins,* an indictment "serves a notice function to the defendant," whereas "the function of the jury charge is to instruct the jury on the law applicable to the case." *Id.* The indictment in Chimney's case provided him sufficient notice because it alleged that he "intentionally and knowingly" caused Owens' death "by shooting her with a firearm" and "during the same criminal transaction" caused Byrd's death "by shooting her with a firearm." *Dinkins,* 894 S.W.2d at 338–39.

The indictment in this case is identical in all material respects to the one approved by the Court of Criminal Appeals in *Dinkins.* Therefore, the court did not err in overruling Chimney's motion to quash. Accordingly, we overrule Chimney's fourth issue.

## VOIR DIRE

In his first and second issues, Chimney contends the court erred by failing to allow him to propound certain questions to the venire. The first issue deals with the question, "In a hypothetical fact situation in a capital murder case if the victim was pregnant could you be fair and impartial?" The second issue concerns the question, "In a hypothetical fact situation in a murder case can you consider five years probation if the victim was pregnant?" The State responds that these issues should be overruled because they are multifarious; because they are inadequately briefed in that "[Chimney] never cites where in the record there was any proof of pregnancy"; and because the court did not abuse its discretion in disallowing the questions posed.

### MULTIFARIOUS ISSUES

■ The former article 40.09(9) of the Code of Criminal Procedure required an appellant to "set forth separately each ground of error of which [he] desire[d] to complain on appeal." Act of May 31, 1981, 67th Leg., R.S., ch. 291, § 108, 1981 Tex. Gen. Laws 761, 807, *repealed by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, §§ 1, 4, 1985 Tex. Gen. Laws 2472, 2472–73. Under this statute, the Court of Criminal Appeals rejected a point of error as "multifarious" when it complained of multi-

---

1. We note, however, that the charge specifically required the jury to find that Chimney "intentionally or knowingly caused the death of Cassandra Owens" and "intentionally or knowingly caused the death of Tonja Byrd" before it could convict him of capital murder.

Moreover, on the lesser-included Byrd murder for which the jury ultimately convicted Chimney, the court charged the jury that it had to find beyond a reasonable doubt that Chimney intentionally or knowingly caused her death.

ple actions of the trial court or when it presented multiple reasons a single action of the court was erroneous. *See, e.g., Smith v. State,* 676 S.W.2d 379, 383 (Tex. Crim.App.1984) (ground multifarious which complains of three different rulings by the court); *Morin v. State,* 682 S.W.2d 265, 267 (Tex.Crim.App.1983) (ground multifarious which asserts four different reasons court erred in its ruling).

The Court adopted former appellate rule 74 in place of article 40.09. Rule 74(d) provided in pertinent part that an appellant's brief should contain a "statement of the points upon which an appeal is predicated." TEX.R.APP. P. 74(d), 49 Tex. B.J. 579 (Tex.Crim.App.1986, amended 1997). Of rule 74(d) the Court said, "This Court has sought to prohibit the use of multifarious points of error by attorneys on appeal." *Pyles v. State,* 755 S.W.2d 98, 111 (Tex.Crim.App.1988) (citing rule 74(d)). Thus, the Court construed rule 74(d) to prohibit multifarious points in the same manner as the former article 40.09(9). *See* 43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.294 (1995).

In 1997 however, the Court effectively repealed the former appellate rules and adopted rules which prescribe the form for briefs in a significantly different manner. Under appellate rule 38.1(e), "The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX.R.APP. P. 38.1(e). Rule 38.9(b) provides:

> If the court determines, either before or after submission, that the case has not been properly presented in the briefs, or that the law and authorities have not been properly cited in the briefs, the court may postpone submission, require additional briefing, and make any other order necessary for a satisfactory submission of the case.

*Id.* 38.9(b).

We conclude from these provisions that the current appellate rules do not permit a court to overrule an issue or point of error as multifarious. *Accord B.D Holt Co. v. OCE, Inc.,* 971 S.W.2d 618, 619 (Tex. App.—San Antonio 1998, pet. denied); 43 DIX & DAWSON, *supra* § 43.294 (Supp.1999); *but cf. Saldivar v. State,* 980 S.W.2d 475, 487 n. 3 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd); *In re R.V.,* 977 S.W.2d 777, 782 (Tex.App.—Fort Worth 1998, no pet.); *Martinez v. State,* 969 S.W.2d 497, 499 (Tex.App.—Austin 1998, no pet.) (each recognizing points as "multifarious"). This conclusion finds further support in the fact that the most recent reported opinion of the Court of Criminal Appeals in which the Court recognized a point as multifarious was decided under former rule 74(d). *See Dunn v. State,* 951 S.W.2d 478, 480 (Tex. Crim.App.1997). Accordingly, we reject the State's argument that Chimney's first and second issues should be overruled as multifarious.

### INADEQUATE BRIEFING

The State also suggests that Chimney's first and second issues are inadequately briefed because Chimney does not provide a citation to the point in the record when evidence of Byrd's pregnancy was introduced. Although it is true that Chimney does not provide a record reference in his brief on this particular point of evidence, we will nevertheless consider his first and second issues in the interest of justice. *See Aldrich v. State,* 928 S.W.2d 558, 559 n. 1 (Tex.Crim.App.1996); TEX.R.APP. P. 38.9(b).

### PERTINENT FACTS

Because Chimney was tried for capital murder and the State did not waive the death penalty, the parties examined each veniremember individually. *See* TEX.CODE CRIM. PROC. ANN. art. 35.17(2) (Vernon Supp.1999). On the first day of voir dire, the parties questioned eight potential jurors. Chimney asked the first veniremember, "Could you consider probation

for the murder-intentional murder of a pregnant woman?" The court sustained the State's objection that Chimney was attempting to commit the prospective juror to the facts of the case. The parties ultimately accepted the first veniremember.

Chimney propounded a similar question to the second veniremember, and the court again disallowed the question. Chimney exercised his first peremptory challenge on this potential juror.

Before the third prospective juror was questioned, Chimney informed the court:

Judge, before we bring the next juror in we would proffer the following question to each and every juror, and that is "Can you consider five years probation in a murder case where the victim was a pregnant woman?" We want to ask that of each and every juror, and you have declined the first two jurors.

The court sustained the State's objection to this question.

On the first day of voir dire, the parties examined eight prospective jurors. Chimney exercised peremptory challenges on two of them. The State exercised a single peremptory challenge. Three veniremembers were excused for cause, and two were seated as jurors.

Before questioning resumed on the second day, the following colloquy occurred:

Judge, before we begin, this is the beginning of the second day of jury selection, I have a couple more questions I want to proffer to each and every juror and ask for a ruling on that before I do so. The first is in a hypothetical fact situation in a capital murder case if the victim was pregnant, could you be fair and impartial? The second is in a hypothetical fact situation in a murder case

can you consider five years probation if the victim was pregnant?

The court sustained the State's objections to both questions.

During the remaining seven days of jury selection, the parties questioned sixty-seven potential jurors. Chimney exercised peremptory challenges on eleven of them. The State exercised ten peremptory challenges. Thirty-four veniremembers were excused for cause or by agreement, and the remaining twelve completed the jury panel, including two alternate jurors. *In toto*, Chimney exercised thirteen of his fifteen peremptory challenges.

### APPLICABLE LAW

■ "The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion. The propriety of the question which the defendant sought to ask is determinative of the issue." *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App.1991); *accord Carson v. State*, 986 S.W.2d 24, 28 (Tex.App.—San Antonio 1998, pet. granted).[2]

■ Counsel may not commit "veniremembers to a certain verdict given particular facts." *Maddux v. State*, 862 S.W.2d 590, 592 (Tex.Crim.App.1993). Hypothetical questions containing facts similar to those presented in the case on trial may be used to explain the application of the law to the case but not to commit prospective jurors to a particular verdict given the facts presented in such questions. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex.Crim. App.1997).

■ Defense counsel may pose a hypothetical question to the venire inquiring whether the prospective jurors could be fair and impartial given the victim's status (*e.g.*, a nun or a child). *Maddux*,

2. The Court of Criminal Appeals granted review in *Carson* on a separate question, "Can the Court of Appeals reverse a cause for punishment proceedings alone under art. 44.29, V.A.C.C.P., when the error occurred during voir dire, not in the punishment phase?" *Carson v. State*, No. 1822–98 (Tex.Crim.App. Mar. 17, 1999) (order granting petition for discretionary review).

862 S.W.2d at 591–92; *Nunfio,* 808 S.W.2d at 484–85; *Cena v. State,* 960 S.W.2d 804, 807–08 (Tex.App.—El Paso 1997), *vacated on other grounds,* 991 S.W.2d 283 (Tex. Crim.App.1999) (per curiam).[3] Victim-status questions are permitted because they enable defense counsel "to discover a veniremember's bias in favor of the complainant's status." *Maddux,* 862 S.W.2d at 592; *accord Nunfio,* 808 S.W.2d at 484.

■ On the issue of punishment, defense counsel may question veniremembers about applicable punishment ranges including whether they could consider community supervision. *Mathis v. State,* 576 S.W.2d 835, 839 (Tex.Crim.App. 1979); *Fontenot v. State,* 903 S.W.2d 413, 418 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). However, counsel may not pose hypothetical questions which attempt to commit prospective jurors to a certain punishment verdict based on facts peculiar to the case on trial. *Williams v. State,* 481 S.W.2d 119, 120–21 (Tex.Crim.App.1972); *Hyde v. State,* 869 S.W.2d 660, 662–63 (Tex.App.—Beaumont 1994, pet. ref'd). Texas courts have found questions to be improper under this rule in several different scenarios. *See, e.g., Williams,* 481 S.W.2d at 120–21 (whether veniremembers could consider assessing minimum punishment of five years given certain facts); *Bailey v. State,* 838 S.W.2d 919, 920–22 (Tex.App.—Fort Worth 1992, pet. ref'd) (whether veniremembers could "be fair and give fair consideration of a probated sentence if the evidence showed that the injured party, [J.W.], was at the time of an age between one and two years"); *Hilla v. State,* 832 S.W.2d 773, 776 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd) (whether prospective juror "based on the

publicity he had read" "was open to a five-year probated sentence").

## ANALYSIS

■ In his second issue, Chimney complains of the court's failure to permit him to ask the veniremembers whether they could "consider five years probation" if the victim were pregnant. This question appears to have been an effort to commit the prospective jurors to a certain punishment verdict based on facts peculiar to the case on trial. *See Williams,* 481 S.W.2d at 120–21; *Bailey,* 838 S.W.2d at 920–22; *Hilla,* 832 S.W.2d at 776. Thus the court did not abuse its discretion in disallowing this question. *See Bailey,* 838 S.W.2d at 920–22; *Hilla,* 832 S.W.2d at 776. Accordingly, we overrule Chimney's second issue.

■ Chimney's first issue challenges the court's refusal to permit him to ask prospective jurors whether they could be "fair and impartial" in a hypothetical case if the victim were pregnant. This is an appropriate victim status question which should have been permitted. *Maddux,* 862 S.W.2d at 591–92; *Nunfio,* 808 S.W.2d at 484–85; *Cena I,* 960 S.W.2d at 807–08. Thus, the court abused its discretion by failing to allow Chimney to propound the question to the venire. *See Nunfio,* 808 S.W.2d at 484; *Carson,* 986 S.W.2d at 28–29.

## HARM

■ If the trial court abuses its discretion by denying a defendant the right to propound a proper question to prospective jurors, we must conduct a harm analysis. *Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App.1999); *Cena v. State,* 991 S.W.2d 283, 283 (Tex. Crim.App.1999) (per curiam) ("*Cena II* ").[4]

---

**3.** Hereinafter, we refer to the opinion of the El Paso Court as *"Cena I "* and the opinion of the Court of Criminal Appeals as *"Cena II."*

**4.** In *Nunfio,* the Court had concluded that such error "is not subject to a harm analysis." *Nunfio v. State,* 808 S.W.2d 482, 485 (Tex.

Crim.App.1991). The Court came to this conclusion because:

> once a reviewing court decides that a disallowed question was proper, the inescapable fact is that disallowance of the question denied the defendant the ability to intelligently exercise his peremptory challenges. The harm lies in the denial of the ability to

Voir dire error amounts to "constitutional error" "[o]nly in very limited circumstances." *Jones v. State,* 982 S.W.2d 386, 391 (Tex.Crim.App.1998). In *Jones,* the Court identified the following as errors of constitutional magnitude: "when a juror is erroneously excused because of general opposition to the death penalty" (*i.e., Witherspoon*[5] error); and when a juror is excluded for an "impermissible" reason "such as race, sex, or ethnicity" (*i.e., Batson*[6] error). *Id.*

The trial court's error in disallowing the victim status question propounded by Chimney does not fall within the "very limited circumstances" identified in *Jones.* Thus, the error does not amount to a constitutional violation, and the harm analysis of rule 44.2(b) applies. *See* Tex.R.App. P. 44.2(b). Rule 44.2(b) provides in pertinent part that such error "must be disregarded" if it does "not affect substantial rights." *Id.*

In the past, the Court of Criminal Appeals has employed the "harm analysis" "traditionally applied to the erroneous denial of a defendant's challenge for cause" in cases involving "the erroneous prohibition of proper questioning of *individual* prospective jurors." *Anson v. State,* 959 S.W.2d 203, 204 (Tex.Crim.App.1997), *cert. dismissed,* —— U.S. ——, 119 S.Ct. 290, 142 L.Ed.2d 241 (1998) (emphasis added) (citing *Janecka v. State,* 937 S.W.2d 456, 470–71 & n. 9 (Tex.Crim.App.1996) (per curiam)).

*Janecka* is a death penalty case in which the appellant claimed the trial court had improperly limited his voir dire examination of sixteen prospective jurors. *Janec-*

ka, 937 S.W.2d at 470. The Court reviewed prior decisions involving improper limitation of voir dire and observed that historically, "to establish he [has been] harmed by the denial of intelligent use of a peremptory challenge as to a single veniremember, a defendant [has been required to], in effect, blindly exercise a peremptory against the veniremember to prevent him from sitting on the jury." *Id.* 937 S.W.2d at 471 (citing *Emanus v. State,* 526 S.W.2d 806, 808 (Tex.Crim.App.1975) "and its progeny"). The Court reaffirmed *Emanus* and then extended its application from disallowance of a proper question as to a single prospective juror to disallowance of a proper question as to "multiple veniremembers." *Id.*

In *Anson,* the Court for the first time equated this "harm analysis" with the standard for harmless error contained in former appellate rule 81(b)(2). *Anson,* 959 S.W.2d at 204 n. 3. The Court stated, "[T]he standard applied in *Janecka* is simply a specific application of former Rule 81(b)(2) to a recurring fact situation found in voir dire. If an appellant doesn't meet the *Janecka* requirements, then the error is harmless beyond a reasonable doubt." *Id.*

As we have already indicated, the error in this case does not rise to the level of a constitutional violation, and the "harmless beyond a reasonable doubt" standard of rule 44.2(a) (which is identical to that of former rule 81(b)(2)) does not apply. *Fowler v. State,* 958 S.W.2d 853, 864 (Tex. App.—Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999); Tex.R.App. P.

intelligently exercise one's peremptory strikes. To further require a reviewing court to undergo a harm analysis in accordance with Rule 81(b)(2) would be fruitless. *Id.* The Court apparently overruled *sub silentio* this aspect of *Nunfio* in *Cena II. See Cena v. State,* 991 S.W.2d 283, 283 (Tex.Crim.App. 1999) (per curiam). To remove any doubt however, the Court expressly overruled the automatic reversal component of *Nunfio* four weeks later in *Gonzales. Gonzales v. State,* 994 S.W.2d 170, 172 (Tex.Crim.App.1999).

5. *See Witherspoon v. Illinois,* 391 U.S. 510, 521–22, 88 S.Ct. 1770, 1776–77, 20 L.Ed.2d 776 (1968).

6. *See Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986) (race); *see also J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 128–29, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994) (gender).

44.2(a). Nevertheless, the *Anson* harm analysis antedates the adoption in 1986 of the Texas Rules of Appellate Procedure (and specifically rule 81(b)(2)). *Compare Sanne v. State,* 609 S.W.2d 762, 770 (Tex. Crim.App.1980); *Emanus,* 526 S.W.2d at 808; *Silva v. State,* 635 S.W.2d 775, 778–79 (Tex.App.—Corpus Christi 1982, pet. ref'd); *with* Tex.R.App. P. 81(b)(2), 49 Tex. B.J. 581 (Tex.Crim.App.1986, amended 1997).

In *Jones,* the Court of Criminal Appeals adopted a pre-rules harm analysis to the non-constitutional voir dire error of granting the State's improper challenge for cause. *See Jones,* 982 S.W.2d at 392–94 (citing *Lawson v. State,* 67 Tex.Crim. 24, 25, 148 S.W. 587, 588 (1912)). We shall follow the Court's lead and apply the pre-rules harm analysis of *Anson* to cases in which we determine the trial court has erroneously prohibited the "proper questioning of individual prospective jurors." *Anson,* 959 S.W.2d at 204.

■■■ Voir dire error is deemed harmful under *Anson* only when the defendant: (1) exhausts all his peremptory challenges; (2) requests additional peremptory challenges; (3) has this request denied; and (4) "identifies an objectionable person seated on the jury on whom he would have exercised a peremptory challenge." *Anson,* 959 S.W.2d at 204 (citing *Narvaiz v. State,* 840 S.W.2d 415, 427 (Tex.Crim.App.1992)); *Carson,* 986 S.W.2d at 29.

■■■ Chimney did not exhaust his peremptory challenges. Accordingly, no harm is shown by the court's improper refusal to permit him to propound a victim status question to the individual prospective jurors. *Anson,* 959 S.W.2d at 204. Thus, we overrule his first issue.

7. We cite the rules of evidence in effect at the time of trial. Nevertheless, the current rule likewise requires "reasonable notice" of the State's intent to offer evidence of extraneous conduct on "timely request." *See* Tex.R. Evid. 404(b).

## EVIDENCE OF GANG AFFILIATION

Chimney argues in his third issue that the State failed to give him "reasonable notice" of its intent to offer evidence of his gang affiliation during the punishment phase. In his seventh issue, he avers that the court abused its discretion by admitting a baseball cap worn by "several" members of this gang even though the sponsoring witness "never linked" the cap to Chimney.

### Pertinent Facts

Chimney filed a motion approximately one month before the commencement of voir dire requesting the court to require the State to provide notice of any extraneous crimes, wrongs or acts it intended to offer at trial as required by article 37.07, section 3(g) of the Code of Criminal Procedure and Rule 404(b) of the Rules of Criminal Evidence. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp.1999); Tex.R.Crim. Evid. 404(b).[7] The court considered Chimney's motion in a pre-trial hearing held two days after Chimney filed it.

During the punishment phase of trial, the State sought to introduce the testimony of a Huntsville police detective as a "gang expert." Chimney objected that the State had not given "written notice" of its intent to introduce evidence of gang affiliation at trial.[8] The State responded, "[W]e gave oral notice that we intended to introduce evidence of ... gang affiliation before we ever even started voir dire." Chimney did not dispute this assertion at trial and does not on appeal.

The detective testified that Chimney is a member of "the Deuce gang" in Huntsville. He based his opinion primarily on several of Chimney's tatoos which are consistent with those worn by members of that gang.

8. Chimney also objected that the State had not listed the detective as a witness in violation of the court's pre-trial discovery order. The court overruled this objection, and Chimney does not challenge this ruling on appeal.

He identified three of the tatoos as commemorating:

- a fellow member who was killed in Huntsville;
- a fellow member who had been convicted of capital murder and received a mandatory life sentence; and
- section 187 of the California Penal Code which is the murder statute in that state and has "become popular for use by criminal gangs in our country because California is believed or perceived to be the home of street gangs."

According to the detective, "the Deuces" are "involved primarily in the trafficking sale of crack cocaine." He also identified a cap which several members had custom made. The detective has never seen Chimney wear such a cap, and no other witness testified that Chimney had ever worn one like it. The cap bears the name of the gang and the slogans—"die hard nigga" and "grave digger."

### APPLICABLE LAW

#### Admissibility of Evidence of Gang Affiliation

Gang affiliation "is relevant character evidence and therefore admissible." *Anderson v. State*, 901 S.W.2d 946, 950 (Tex.Crim.App.1995).

> [E]vidence concerning appellant's gang membership is relevant because it relates to his character. This information alone however, may not be enough for the jury to make an informed decision of appellant's character. It is essential for the jury to know the types of activities the gang generally engages in so that they can determine if his gang membership is a positive or negative aspect of his character, and subsequently his character as a whole. Only after the jury has been provided with this infor-

mation can there be a fair evaluation of how gang membership reflects on the gang member's character.

*Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim.App.1995) (citing *Ybarra v. State*, 775 S.W.2d 409, 411 (Tex.App.—Waco 1989, no pet.)).

The State may introduce evidence of gang misconduct without linking the accused to that misconduct if the jury is:

(1) provided evidence of the defendant's membership in the gang;

(2) provided evidence of the character and reputation of the gang;

(3) not required to determine if the defendant committed the acts of misconduct committed by the gang; and

(4) asked to consider the reputation or character of only the accused.[9]

*Id.* at 457.

### Article[10] 37.07, Section 3

Article 37.07, section 3(a) (hereinafter, "section 3(a)") permits the court within its discretion to admit evidence at punishment of the defendant's "character." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1999). "On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b)." *Id.* art. 37.07, § 3(g). If a defendant relies on a motion filed with the court as his request for notice, he must secure a ruling on the motion to trigger the State's duty to provide notice. *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex.Crim. App.1998).

"The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush." *Nance v. State*, 946 S.W.2d 490, 493 (Tex.App.—Fort Worth 1997, pet. ref'd). "In other words, the

---

9. Although the Court did not specify the manner in which the jury's consideration of gang misconduct evidence should be limited, we presume that a limiting instruction will suffice. *See* TEX.R.CRIM. EVID. 105(a).

10. Hereinafter, the term "article" refers to an article of the Code of Criminal Procedure unless otherwise indicated.

purpose is to allow the defendant adequate time to prepare for the State's introduction of the [evidence] at trial." *Hernandez v. State*, 914 S.W.2d 226, 234 (Tex.App.—Waco 1996, no pet.) (addressing extraneous offenses admitted under Rule 404(b)).[11]

Rule 404(b) provides in pertinent part that the State must give "reasonable notice" "in advance of trial" of its intent to introduce evidence of extraneous conduct. TEX.R.CRIM. EVID. 404(b). The rule does not define what constitutes a "reasonable" form of notice, nor have any cases developed this. *See* 41 DIX & DAWSON, *supra* § 22.102 (1995); David A. Schlueter, *Notice of Rule 404(b) Evidence: Open Files Do Not Count*, 59 Tex. B.J. 753, 753 (1996). Rather, the cases in large part have focused on whether the notices in question were sufficiently timely to be considered "reasonable." *See, e.g., Neuman v. State*, 951 S.W.2d 538, 540 (Tex.App.—Austin 1997, no pet.); *Hernandez*, 914 S.W.2d at 234–35; *Self v. State*, 860 S.W.2d 261, 264 (Tex.App.—Fort Worth 1993, pet. ref'd).

■ At least one federal court has concluded that notice is presumptively reasonable if given at least ten days before trial.[12] *United States v. Williams*, 792 F.Supp. 1120, 1133 (S.D.Ind.1992); *but cf. United States v. Heatley*, 994 F.Supp. 483, 491 (S.D.N.Y.1998) (requiring three weeks' notice). We held in *Hernandez* that notice given the Friday before a Monday trial is unreasonable, particularly in light of the fact that the defendant in that case had served his request on the State almost ten months earlier. *Hernandez*, 914 S.W.2d at 234. Thus, the timing of a defendant's 404(b) request has some bearing on how reasonably timely the State's notice is.

*See, e.g., Self*, 860 S.W.2d at 264 (five days' notice reasonable where defendant had made request only two weeks earlier). Although we recognize that the reasonableness of the timing of the State's notice depends in part on the timing of the defendant's request, we agree with the court in *Williams* that notice provided ten days before trial will be presumptively reasonable.[13]

The Court of Criminal Appeals has stated that a *defendant's request* for 404(b) notice "should be in writing." *Espinosa v. State*, 853 S.W.2d 36, 38 (Tex.Crim.App. 1993). As one commentary has noted in discussing *Espinosa*, "No effort to give notice orally—as, for example, during an appearance before the court reflected in the record—was before the Court in *Espinosa* and the case did not hold that oral notice was necessarily insufficient." 41 DIX & DAWSON, *supra* § 22.102 n.2.

■ From *Espinosa* we conclude that the State's notice *should* be in writing. Assuming the notice is timely, a written notice which otherwise complies with the requirements of Rule 404(b) and/or article 37.07, section 3(g) (hereinafter, "section 3(g)") will be presumptively reasonable.[14] *See* Schlueter, *supra*, 59 Tex. B.J. at 753 ("as always, it is probably better practice to put [notice] in writing"). In fact, most section 3(g) and Rule 404(b) cases have involved questions of the adequacy of a tendered written notice. *See, e.g., Roman v. State*, 986 S.W.2d 64, 65–66 (Tex.App.—Austin 1999, pet. ref'd); *McQueen v. State*, 984 S.W.2d 712, 715 (Tex.App.—Texarkana 1998, no pet.); *Splawn v. State*, 949 S.W.2d 867, 871 (Tex.App.—Dallas 1997, no pet.); *Nance*, 946 S.W.2d at 491; *Hernandez*, 914

---

**11.** *Hernandez* and other Rule 404(b) cases are instructive because article 37.07, section 3(g) requires the State to provide notice "in the same manner required by Rule 404(b)." *See Dodgen v. State*, 924 S.W.2d 216, 219 (Tex. App.—Eastland 1996, pet. ref'd).

**12.** Federal Rule 404(b) similarly requires "reasonable notice in advance of trial" if requested by the accused. FED.R.EVID. 404(b).

**13.** We recognize of course that this presumption may be rebutted depending on the facts and circumstances of the case.

**14.** See note 13, *supra*.

S.W.2d at 234; *Self,* 860 S.W.2d at 264. Written notice is particularly appropriate in cases involving unadjudicated crimes or bad acts because the statute requires the State to include in its notice "the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

Nevertheless, neither section 3(g) nor Rule 404(b) expressly requires written notice. *See* 41 DIX & DAWSON, *supra* § 22.102 n.2. A split of authority exists among Texas courts concerning the propriety of oral notice. Our research has disclosed two published decisions in Texas bearing on the propriety of oral notice. *Woodard v. State,* 931 S.W.2d 747, 749 (Tex.App.—Waco 1996, no pet.); *Neuman,* 951 S.W.2d at 540.

In *Woodard,* this Court determined that oral notice can satisfy the requirements of section 3(g). *Woodard,* 931 S.W.2d at 749. The State gave defense counsel copies of two penitentiary packets reflecting convictions for the offenses used by the State to enhance Woodard's punishment. The packets also referenced a third prior felony conviction and three other offenses taken in consideration by the convicting court in assessing punishment pursuant to section 12.45 of the Penal Code.[15] *See id.* at 749–50. The State told counsel that "everything in the documents was subject to introduction." *Id.* at 749. On appeal, Woodard first argued that he did not receive notice of the State's intent to introduce the three offenses previously considered under section 12.45. *Id.* We held that the tendered copies of the penitentiary packets reflecting these offenses together

with the State's oral notification provided the defendant reasonable notice of the State's intent to introduce these offenses at punishment. *Id.*

Woodard also contended that because he was never "convicted" of the offenses, he was entitled to the additional notice required by section 3(g) for unadjudicated offenses. *Id.* We disagreed however because such offenses are considered adjudicated for purposes of section 3(g). *Id.* at 750 (citing *Whalon v. State,* 725 S.W.2d 181, 195 (Tex.Crim.App.1986) (op. on reh'g); *Perea v. State,* 870 S.W.2d 314, 318 (Tex.App.—Tyler 1994, no pet.); *Murray v. State,* 840 S.W.2d 675, 679 (Tex.App.—Tyler 1992, no pet.)). Thus, we concluded Woodard was not entitled to the additional notice provided by section 3(g). *Id.*

The Austin Court of Appeals has considered the propriety of oral notification under Rule 404(b). *See Neuman,* 951 S.W.2d at 540. In *Neuman,* the State provided the defendant written notice of its intent to offer numerous extraneous offenses, omitting one threatening telephone call. The court "gleaned" from the record that the State had first attempted (apparently unsuccessfully) to give the defendant notice on the Friday before trial of its intent to introduce a recording of the defendant's threatening call. *Id.* Defense counsel objected to introduction of the recording in issue because she was not "told" until the morning of trial that the State intended to use it. *Id.* The court observed, "[R]ule 404(b) does not specify the manner of giving notice and we do not believe that the State's failure to include the recorded telephone call in its written Rule 404(b) notice necessarily barred introduction of the evi-

---

**15.** Section 12.45 permits a trial court to take an unadjudicated offense into account when assessing punishment, if the State consents and the defendant admits the offense. TEX. PEN.CODE ANN. § 12.45(a), (b) (Vernon 1994). When the court does so, the State is barred from prosecuting the accused for the offense taken into account under this provision. *Id.* § 12.45(c) (Vernon 1994). The offense is then considered "adjudicated" for impeachment

purposes and under article 37.07, section 3(g). *Woodard v. State,* 931 S.W.2d 747, 750 (Tex.App.—Waco 1996, no pet.); *Perea v. State,* 870 S.W.2d 314, 318 (Tex.App.—Tyler 1994, no pet.); *see also Whalon v. State,* 725 S.W.2d 181, 195 (Tex.Crim.App.1986) (op. on reh'g). A defendant may not appeal the "adjudication" of such an offense, however. *Hilburn v. State,* 946 S.W.2d 885, 886 (Tex. App.—Fort Worth 1997, no pet.).

dence." *Id.* However, the court concluded that the State did not provide reasonable notice because of the timing of the notice. *Id.* (citing *Hernandez,* 914 S.W.2d at 234; *Self,* 860 S.W.2d at 264).

■ Application of the ordinary rules of statutory construction to Rule 404(b) leads to the conclusion that oral notice can be reasonable under the rule. *See Ludwig v. State,* 931 S.W.2d 239, 241 (Tex.Crim. App.1996) (construing Tex.R.Crim. Evid. 504(1)(d)(2)). When construing a court-made rule, we may consider extratextual factors regardless of the plain language of the rule. *Id.; but cf. State v. Mancuso,* 919 S.W.2d 86, 87–88 (Tex.Crim.App.1996) (generally, extratextual factors should not be considered when construing a legislative enactment).

■ We presume that the Court of Criminal Appeals intended the Rules of Criminal Evidence in their entirety to be effective when it adopted them. *See McVickers v. State,* 838 S.W.2d 651, 655 (Tex.App.—Corpus Christi 1992), *aff'd,* 874 S.W.2d 662 (Tex.Crim.App.1993); Tex. Gov't Code Ann. § 311.021(2) (Vernon 1998). "Every word in [the rules] has been used for a purpose and each word, phrase, clause, and sentence should be given effect if reasonably possible." *Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim. App.1996).

Rule of Criminal Evidence 609(f) requires the State, upon timely request by the defense, to give notice of its intent to use a prior conviction to impeach any witness identified in the defense's request. Tex.R.Crim. Evid. 609(f). Unlike Rule 404(b)'s requirement of "reasonable notice" however, Rule 609(f) specifically requires the State to give "advance *written* notice of intent to use such evidence." *Compare* Tex.R.Crim. Evid. 404(b) *with* Tex.R.Crim. Evid. 609(f) (emphasis added).

■ If the Court of Criminal Appeals had intended to require written notice un-

der Rule 404(b), it could have easily done so by stating such a requirement in the rule (as it did in Rule 609(f)). *See Dowthitt,* 931 S.W.2d at 258 (construing article 38.22, section 3 in the same manner). The Court did not do so. Accordingly, we conclude that the Rule 404(b) requirement of "reasonable notice" does not absolutely require the State's notice to be in writing.

We are aware of two statutes to which the Court of Criminal Appeals has expressly grafted a writing requirement and one other to which a writing is analogously required. The Court has always held that enhancement allegations must be set forth in writing. *See, e.g., Brooks v. State,* 957 S.W.2d 30, 34 (Tex.Crim.App.1997); *Farris v. State,* 155 Tex.Crim. 261, 263–64, 233 S.W.2d 856, 858 (1950). In *Brooks,* the Court explained that, while written notice of enhancement allegations is required, such notice need not be set forth in the indictment. *Brooks,* 957 S.W.2d at 34.

An affirmative deadly weapon finding under article 42.12, section 3g limits a defendant's parole eligibility to the extent that he will not become eligible for parole until he has served at least one-half of his sentence or thirty years, whichever is less. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 4 (Vernon Supp.1999). Because of this, the Court of Criminal Appeals has determined that, at a minimum, due course of law requires the State to give the accused written notice of its intent to seek a deadly weapon finding. *See Ex parte Patterson,* 740 S.W.2d 766, 776 (Tex.Crim.App.1987); Tex. Const. art. I, § 19; *see also Jordan v. State,* 1 S.W.3d 153, 157–58 (Tex.App.— Waco 1999, pet. filed).

Similarly, if the jury makes an affirmative finding that a defendant committed the crime alleged because of his "bias or prejudice against a group" (*i.e.,* a so-called "hate crime"), then the punishment range for the defendant "is increased to the punishment prescribed for the next highest category of offense." [16] Tex.Code Crim.

16. Such a finding is more closely akin to an enhancement allegation than a deadly weap-

PROC. ANN. art. 42.014 (Vernon Supp.1999); TEX. PEN.CODE ANN. § 12.47 (Vernon Supp. 1999). Arguably then, written notice of the State's intent to seek a finding under article 42.014 is constitutionally required. *See Martinez v. State*, 980 S.W.2d 662, 669–70 (Tex.App.—San Antonio 1998, pet. ref'd).

 Evidence admitted under section 3(a) at punishment serves to provide the jury "with all relevant evidence in order to assess fair and appropriate punishment." *Beasley*, 902 S.W.2d at 457. Unlike a deadly weapon finding which affects parole eligibility or enhancement or hate-crime allegations which increase punishment range, punishment evidence itself does not "detrimentally shade the character" or degree of punishment in such a way as would implicate the due course of law or due process provisions of the state and federal constitutions. *Cf. Patterson*, 740 S.W.2d at 776. Thus, we conclude written notice of the State's intent to introduce particular evidence at punishment is not constitutionally required.

In summary, Rule 404(b) does not expressly require the State to provide written notice of its intent to introduce evidence of extraneous misconduct. Section 3(g) requires the State to provide notice of its intent to introduce such evidence at punishment "in the same manner required by Rule 404(b)." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g). Thus, section 3(g) does not require written notice either.

 Nevertheless, the State's notice "should be in writing." *See Espinosa*, 853 S.W.2d at 38. We will presume the State's notice is "reasonable" if it is made in writing and provided to the defense at least ten days before trial (assuming that it otherwise provides the information required). *See Williams*, 792 F.Supp. at 1133. When the State relies on an oral notice to satisfy the requirements of Rule 404(b) or section 3(g), the State would do well to make that notification appear in the

record in some manner (perhaps, by informing the trial court on the record during a pre-trial hearing that the notice has been provided and describing the content of that notice). *See* 41 DIX & DAWSON, *supra* § 22.102 n.2. Cases in which the State purports to have given oral notice which does not appear in the record will be closely scrutinized, particularly when the additional notice requirements of section 3(g) for unadjudicated misconduct are implicated.

## ANALYSIS

### Reasonableness of Oral Notification

 The State first argues that because evidence of gang affiliation is character evidence rather than evidence of extraneous crimes and bad acts "the appropriate governing statute is Rule 404(c)" which "contains no notice provision." The former Rule 404(c) provided that in the punishment phase "evidence of [the defendant's] character may be offered by an accused or by the prosecution." TEX.R.CRIM. EVID. 404(c). Relying on a capital murder case, the State asserts that no notice is required to introduce character evidence at punishment in this case because neither Rule 404(c) nor article 37.071 (the capital murder sentencing statute) requires it. *See Vuong v. State*, 830 S.W.2d 929, 942 (Tex.Crim. App.1992). However, the State's reliance on *Vuong* is misplaced because the jury in Chimney's case did not convict him of capital murder. *See* TEX.CODE CRIM. PROC. ANN. art. 37.071, § 2 (Vernon Supp.1999) (capital sentencing statute applies "on a finding that the defendant is guilty of a capital offense").

The Amarillo court has concluded that the section 3(g) notice requirement does not apply to character evidence. *Hardaway v. State*, 939 S.W.2d 224, 226 (Tex. App.—Amarillo 1997, no pet.) (citing *Vuong*, 830 S.W.2d at 942). No court has followed *Hardaway*, and we likewise de-

on finding because it increases the actual punishment range.

cline to do so because the rationale of *Vuong* should be limited to cases in which the defendant has been found guilty of a capital offense. Chimney was not so convicted.

In addition, the former Rules of Criminal Evidence applied only "to the extent matters of evidence are not provided for in the statutes which govern procedure therein." Tex.R.Crim. Evid. 1101(d); *see also* Tex.R.Crim. Evid. 101(c) (Rules of Criminal Evidence superceded in "hierarchical governance" by Code of Criminal Procedure). Section 3(g) expressly requires the State to give notice of evidence it intends to introduce under section 3(a) of the statute.[17] Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g). Character evidence is included in section 3(a) as evidence "relevant to sentencing." *Id.* art. 37.07, § 3(a). Thus, section 3(g) requires the State to give notice of any character evidence it intends to offer during the punishment phase of trial "[o]n timely request of the defendant." *Id.* art. 37.07, § 3(g). This statutory requirement supercedes the provisions of Rule 404(c).[18] Tex.R.Crim. Evid. 101(c), 1101(d).

■■■ The State also avers that its duty to provide Chimney notice under section 3(g) was never triggered because Chimney failed to obtain a ruling from the court on his motion for notice. *See Mitchell,* 982 S.W.2d at 427. The following colloquy occurred when the court took the motion under consideration:

> COUNSEL: Judge, we have a Motion to reveal evidence of crimes and [extraneous matters] against our client under 404(b) and in the trial and 37.07.
>
> . . . .

COUNSEL: Judge, out of an abundance of caution, I want to make sure on the record that Mr. McLain [the prosecutor] has been provided with our motion for evidence of other crimes under—request notice be given to us.

PROSECUTOR: It was received this morning at 8:30 o'clock.

COURT: And you're talking about extraneous crimes of the defendant?

COUNSEL: Right.

COURT: And extraneous crimes of the witnesses?

COUNSEL: No.

PROSECUTOR: Rule 404 and 37.07 specifically require that I give them notice of extraneous offenses for punishment and anything that can be admissible under 404(b)—

COURT: Okay, this is the defendant.

PROSECUTOR:—in a reasonable time. Yes, sir.

COURT: All right. So noted, advised and received. What else?

The court's ruling on the motion is not a model of clarity. Nevertheless, given the tenor of the conversation between the court and counsel when reviewing the motion and particularly the prosecutor's comments regarding his duty to provide notice, we find the court's pronouncement on the matter adequate to invoke the State's responsibility to provide notice under section 3(g).[19] The parties agreed in the pre-trial hearing that the State could comply with the various disclosure requirements made in the hearing by providing notice no later than the day before voir dire.

---

17. Section 3(g) actually requires the State to give notice of evidence it intends to introduce under Article 37.07. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g). However, the only provision for the introduction of evidence contained in article 37.07 is found in section 3(a) of that article.

18. Furthermore, Rule 404(c) was omitted when the Court of Criminal Appeals and the

Supreme Court adopted the unified Rules of Evidence in March 1998 to replace the former Rules of Criminal Evidence. *Compare* Tex.R. Evid. 404 *with* Tex.R.Crim. Evid. 404.

19. Even if the court did not grant this motion, the court expressly granted a similar request contained in Chimney's general discovery motion.

The State stated at trial that it provided Chimney oral notice of its intent to introduce evidence of his gang affiliation before voir dire. Chimney does not argue that he did not receive this notice or that it was untimely. Rather, he contends that it was not "reasonable" because it was not given in writing. We disagree. As we have discussed above, Rule 404(b) does not mandate written notice. This Court and at least one other have concluded that oral notification can satisfy the notice requirement of section 3(g) under the proper circumstances. *Newman,* 951 S.W.2d at 540; *Woodard,* 931 S.W.2d at 749. Thus, we conclude the State provided Chimney reasonable notice of its intent to introduce evidence of his gang affiliation during the punishment phase of trial. We overrule Chimney's third issue.

### EVIDENCE OF GANG PARAPHERNALIA

Chimney claims in his seventh issue that the court abused its discretion in admitting the gang cap because the probative value of this piece of evidence is substantially outweighed by the danger of unfair prejudice. *See* TEX.R.CRIM. EVID. 403. He relies primarily on the fact that the cap was never linked to him.

The Court of Criminal Appeals has determined that evidence of gang misconduct is relevant and admissible character evidence even if the accused, though shown to be a member, is not linked to the instances of misconduct proved. *Beasley,* 902 S.W.2d at 456–57. "All testimony and physical evidence will likely be prejudicial to one party or the other." *Jones v. State,* 944 S.W.2d 642, 653 (Tex.Crim.App.1996). Punishment evidence of gang misconduct not linked to the accused will be considered unfairly prejudicial for purposes of Rule 403 "only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Id.* Having reviewed the record in this case, we cannot say the probative value of the evidence in question is substantially outweighed by the danger of un-

fair prejudice. *See id.* Accordingly, we overrule Chimney's seventh issue.

### TRANSFERRED INTENT AND SUDDEN PASSION

Chimney contends in his fifth issue that the court erred in denying his requested jury instruction on the law of transferred intent with respect to his claim of sudden passion. He relies primarily on pre–1925 authorities to support his position. The State responds that these authorities no longer control due to subsequent amendments to the pertinent homicide statutes.

#### PERTINENT FACTS

Several witnesses established that Chimney and others with him became involved in an altercation with one Sterling Turner inside a bar. Those involved went outside, and a fight ensued between Turner and Chimney's brother. One witness recounted that one of Chimney's companions told Chimney of the fight. This witness subsequently heard shots being fired. Several witnesses identified Chimney as the person firing these shots.

The court submitted a special issue in its punishment charge on the issue of sudden passion. The court instructed the jury that if it found by a preponderance of the evidence that Chimney caused Byrd's death "while under the influence of sudden passion arising from an adequate cause" it should assess his punishment at the level provided for a second degree felony. *See* TEX. PEN.CODE ANN. § 19.02(d) (Vernon 1994). As part of the definitional instructions, the charge informed the jury that "sudden passion" "means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed." *Id.* § 19.02(a)(2).

The court denied the following instruction requested by Chimney:

You are instructed that a person is criminally responsible for causing a result if the only difference between what actually occurred and what is desired,

contemplated, or risked is that a different person was injured, harmed, or otherwise effected [sic]. Therefore, if you find by a preponderance of the evidence that on November 25th of 1995 in Madison County, Texas, the defendant, acting under the immediate influence of sudden passion arising from an adequate cause, fired a firearm at Sterling Turner or others who were engaged in an atercation [sic] with the defendant's brother, if you find that such an altercation occurred, with the intent to cause their death but Tonja Byrd was actually killed, you will find in favor or the defendant on the issue of sudden passion and homicide.

## APPLICABLE LAW

■■■■ The doctrine of transferred intent is a theory of criminal responsibility codified in section 6.04(b) of the Penal Code. *See Belachheb v. State,* 699 S.W.2d 709, 713 (Tex.App.—Fort Worth 1985, pet. ref'd). The statute provides:

A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) a different person or property was injured, harmed, or otherwise affected.

TEX. PEN.CODE ANN. § 6.04(b) (Vernon 1994). Under the statute, a defendant can be held "criminally responsible" (*i.e.,* guilty) for the death of another even if he did not intend to harm the victim so long as he caused the actual victim's death while acting with the intent to kill a different person. *See, e.g., Aguirre v. State,* 732 S.W.2d 320, 323 n. 3 (Tex.Crim.App. [Panel Op.] 1982); *Ojeda v. State,* 945 S.W.2d 197, 201 (Tex.App.—San Antonio 1997, no pet.). Thus, criminal responsibility via transferred intent is an issue to be determined during the guilt-innocence phase.

Before the adoption of the 1994 Penal Code, "sudden passion" was also a guilt-innocence issue. *See* Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (amended 1993) (current version at TEX. PEN.CODE ANN. § 19.02(a)(2)). Under the former law, a person was guilty of voluntary manslaughter if he caused the death of another while "under the immediate influence of sudden passion arising from an adequate cause." *Id.*

In the 1994 code, the Legislature deleted the voluntary manslaughter statute and made sudden passion "a mitigating circumstance at the punishment phase of a murder trial." *Perez v. State,* 940 S.W.2d 820, 821 (Tex.App.—Waco 1997, no pet.). Because the current definitions of sudden passion and adequate cause are identical to those in the former voluntary manslaughter statute, we rely on prior decisions under that law for guidance. *Id.* at 822. The present statute defines "sudden passion" in part as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed." TEX. PEN.CODE ANN. § 19.02(a)(2). This definition first appeared in codified form in the 1974 Penal Code. *See* Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (amended 1993).

Notwithstanding the current statutory definition, Chimney suggests that prior decisions of the Court of Criminal Appeals have intimated that " 'sudden passion' can transfer from one victim to another, as can the culpable mental state of intent." He cites three cases in support of this proposition: *Jacobs v. State,* 85 Tex.Crim. 505, 509, 213 S.W. 628, 630 (1919) ("it has been the uniform holding of this court that, if the defendant would have been guilty of manslaughter had he killed the person intended, the unintentional killing of another person in the attempt to carry out such intent would be manslaughter"); *Whiten v. State,* 71 Tex.Crim. 555, 558, 160 S.W. 462, 464–65 (1913) ("If [Whiten] shot at Haggerty under a sudden transport of passion

produced by adequate cause, and missing him killed Sanders, it could be no higher grade of homicide for killing Sanders than it would have been for killing Haggerty"); *McCullough v. State*, 62 Tex.Crim. 126, 128–29, 136 S.W. 1055, 1056 (1911) ("where the killing is an unintentional homicide of a different person from the one intended, but where the slayer is ... under the immediate influence of sudden passion arising from adequate cause ... the crime would be of no higher grade than manslaughter, because the intended crime would have been manslaughter"). These cases seem to support Chimney's position.

However, opinions of the Court dating to that same era consistently restricted the "sudden passion" element of manslaughter cases to those in which the provocation which rendered the mind of the accused "incapable of cool reflection" arose from the conduct of the person killed or another acting with the decedent. *See, e.g., Miller v. State*, 106 Tex.Crim. 636, 638–39, 294 S.W. 582, 583 (1927); *Garcia v. State*, 70 Tex.Crim. 485, 488, 156 S.W. 939, 941 (1913); *Stacy v. State*, 48 Tex.Crim. 95, 97, 86 S.W. 327, 328 (1905); *Byrd v. State*, 39 Tex.Crim. 609, 617–18, 47 S.W. 721, 726 (1898). In more recent years, the Court has expressly held that an accused is not entitled to a charge on sudden passion when the alleged provocation arises from the conduct of one not acting in concert with the person killed. *Havard v. State*, 800 S.W.2d 195, 215 (Tex.Crim.App.1990) (op. on reh'g); *McCartney v. State*, 542 S.W.2d 156, 161 (Tex.Crim.App.1976); *accord Ojeda*, 945 S.W.2d at 201; *Belachheb v. State*, 699 S.W.2d at 713.

### ANALYSIS

■■■ It is true that the Court of Criminal Appeals has in past years implicitly applied the doctrine of transferred intent to cases in which the defendant acted under the immediate influence of sudden passion. However, we conclude that the Legislature has expressly limited this application by defining sudden passion to

exist only when it arises "out of provocation by the individual killed or another *acting with the person killed.*" Tex. Pen. Code Ann. § 19.02(a)(2) (emphasis added).

The record contains no evidence that Sterling Turner, the object of Chimney's passion, was "acting with" Tonja Byrd when he allegedly provoked Chimney to fire his weapon. *See id.* Accordingly, Chimney was not entitled to an instruction on sudden passion. *Havard*, 800 S.W.2d at 215; *McCartney*, 542 S.W.2d at 161; *Ojeda*, 945 S.W.2d at 201; *Belachheb*, 699 S.W.2d at 713. Because he was not entitled to a charge on sudden passion, he logically would not be entitled to a charge on "transferred passion." Accordingly, we overrule his fifth issue.

### COMMENT ON ACCUSED'S FAILURE TO TESTIFY

Chimney complains in his sixth issue about the court's failure to grant a mistrial as to three instances of punishment argument by the State which allegedly commented on his failure to testify. The State responds that this issue should be overruled as multifarious, that the arguments at issue did not necessarily refer to Chimney's failure to testify, or if the arguments are improper, they were cured by the court's instructions to disregard.

We have already determined that the current appellate rules do not permit a court to overrule an issue or point of error as multifarious. *Accord B.D Holt Co.*, 971 S.W.2d at 619; 43 Dix & Dawson, *supra* § 43.294 (Supp.1999). Accordingly, we will consider Chimney's sixth issue.

### PERTINENT FACTS

Chimney's sixth issue concerns the following argument by the State during the opening portion of its punishment argument:

PROSECUTOR: And you notice that none of them, none of his relatives talked about the victims or what their families are going through except for

the uncle that lives far away. No one said, "I'm sorry. I'm sorry, Ms. Byrd, that Tonja died. I'm sorry that you don't have a grandbaby now. I'm sorry about that. I'm sorry, Ms. Owens and Reginald Price. I'm sorry that your daughter was shot. I'm sorry that your wife was shot." You didn't hear anything about remorse, about Tony Chimney saying anything about remorse.

(The court instructed the jury to disregard the argument upon Chimney's objection that the argument commented on his failure to testify)

You didn't hear from any of their witnesses that testified on the stand, not one of them said that Tony told them he was sorry. Not one of them testified to that.

(The court sustained Chimney's objection that this argument commented on his failure to testify and instructed the jury to disregard it)

Chimney also complains of the following statement made by the prosecutor in final punishment argument:

This is a gang whose job is to deal dope. And what does that tell you about his philosophy of life, about how he values life? Folks, people that are involved in putting the poison of cocaine on the streets will do anything for money, and at the expense of any life and that's what this boy is all about. He could care less about human life, his or anyone's [sic] else's, as long as it gets him up the ladder where he wants to go. No remorse, no feeling about what has happened.

(The court again instructed the jury to disregard the argument upon Chimney's objection that the argument commented on his failure to testify)

## APPLICABLE LAW

■ A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Montoya v. State,* 744 S.W.2d 15, 34 (Tex.Crim.App.1987) (op. on reh'g); *Campbell v. State,* 900 S.W.2d 763, 766 (Tex.App.—Waco 1995, no pet.). Such a comment also runs afoul of article 38.08 which prohibits the State from alluding to or commenting on an accused's failure to testify. *See* TEX.CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979).

■ "The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify." *Caldwell v. State,* 818 S.W.2d 790, 800 (Tex.Crim.App.1991) (quoting *Dickinson v. State,* 685 S.W.2d 320, 323 (Tex.Crim.App.1984)). We view the argument from the perspective of the jury. *Swallow v. State,* 829 S.W.2d 223, 225 (Tex.Crim.App.1992); *Williams v. State,* 946 S.W.2d 886, 903 (Tex.App.—Waco 1997, no pet.). To be offensive, the argument must be more than "an implied or indirect allusion" to the failure of the accused to testify. *Swallow,* 829 S.W.2d at 225; *Williams,* 946 S.W.2d at 903. Argument which is reasonably susceptible to two different interpretations, one of which implicates the accused's failure to testify and one which does not, "would not *necessarily* and *naturally* be understood by the jury to refer to Appellant's failure to testify." *Caldwell,* 818 S.W.2d at 800–01.

■ Argument by the State referring to a defendant's failure to personally express remorse during trial constitutes an improper comment on the defendant's failure to testify. *Cooper v. State,* 959 S.W.2d 682, 686 (Tex.App.—Austin 1997, pet. ref'd); *accord Swallow,* 829 S.W.2d at 225–26. Conversely, argument by the State which refers to the failure of a defendant's witnesses to testify about the defendant's remorse does not comment on the defendant's failure to testify, although it may be improper for other reasons. *Cooper,* 959 S.W.2d at 686; *accord Swallow,* 829 S.W.2d at 225 & n. 2 (citing *Thomas v.*

*State,* 638 S.W.2d 481, 484–85 (Tex.Crim. App.1982)).

## ANALYSIS

■ When we review the context of the first two portions of argument of which Chimney complains, they refer to the failure of Chimney's witnesses to testify about his remorse. Thus, they do not "naturally and necessarily" refer to Chimney's failure to testify. *See Caldwell,* 818 S.W.2d at 800; *Cooper,* 959 S.W.2d at 686. The third portion of the complained-of argument is different, however.

■ In final argument, the State repeatedly focused on Chimney and the reasons he deserved severe punishment. Although the State did respond to Chimney's argument that sudden passion was shown and also urged the jury not to be dissuaded from punishing Chimney severely because he comes from a good family, the primary focus of the State's final argument was Chimney. Thus, we conclude that the last complained-of argument "naturally and necessarily" referred to Chimney's failure to personally express remorse. *See Swallow,* 829 S.W.2d at 225–26. As such, it constitutes a comment on Chimney's failure to testify. *Id.*

For years, Texas courts have grappled with the appropriate harm analysis to apply when considering trial errors related to improper jury argument. *See, e.g., Faulkner v. State,* 940 S.W.2d 308, 313–15 (Tex. App.—Fort Worth 1997, pet. ref'd); *Washington v. State,* 822 S.W.2d 110, 117–18 (Tex.App.—Waco 1991), *rev'd on other grounds,* 856 S.W.2d 184 (Tex.Crim.App. 1993). This struggle can be seen in a variety of approaches taken to resolve whether error has been cured or an appellant has been harmed in such cases. *See,*

*e.g., Mosley v. State,* 983 S.W.2d 249, 258–60 (Tex.Crim.App.1998) (appellant not harmed by improper argument); *Nenno v. State,* 970 S.W.2d 549, 565 (Tex.Crim.App. 1998) (court's instruction to disregard cured error in jury argument—decided one week before *Mosley* ).[20]

This Court and our sister court in Fort Worth have both held that "error" in such cases must be predicated on the trial court's actions. *Faulkner,* 940 S.W.2d at 314; *Washington,* 822 S.W.2d at 118. We stated in *Washington:*

> A prosecutor's improper jury argument is not "error"; only the court can commit error. Error occurs when (1) the court overrules an objection to an improper jury argument, (2) the objection is sustained, but the court denies a request for an instruction to disregard the improper argument, or (3) the objection is sustained, an instruction is given, and the court improperly denies a motion for mistrial.

*Washington,* 822 S.W.2d at 118; *accord Faulkner,* 940 S.W.2d at 314–15.

■ The alleged error in Chimney's case falls within the third category. We must decide whether the denial of his motion for mistrial was error before we even reach the question of whether he was harmed. *See Faulkner,* 940 S.W.2d at 315; *accord Washington,* 822 S.W.2d at 118. In this situation, the trial court's denial of the motion for mistrial is not error if the court's instruction to disregard the improper jury argument was sufficient to cure the prejudicial effect of the argument. *Id.*

In Chimney's case, the court promptly instructed the jury to disregard the State's improper argument when Chimney objected to it. Accordingly, we conclude the

---

20. We note that the harm analysis of *Mosley* does not apply to this case because the jury argument error in *Mosley* did not involve the defendant's constitutional rights, whereas the argument in Chimney's case violated his constitutional right against self-incrimination. *Compare Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) and *Perez v. State,* 994 S.W.2d 233, 237 (Tex.App.—Waco 1999, no pet.) *with Montoya v. State,* 744 S.W.2d 15, 34 (Tex.Crim.App.1987) (op. on reh'g) and *Campbell v. State,* 900 S.W.2d 763, 766 (Tex. App.—Waco 1995, no pet.).

court's instruction cured the prejudicial effect of the State's argument. *See Dinkins,* 894 S.W.2d at 356; *Saldivar,* 980 S.W.2d at 503; *Faulkner,* 940 S.W.2d at 315. Thus, the court did not err in overruling Chimney's motion for mistrial. We overrule Chimney's sixth issue.

We affirm the judgment.