Brian Douglas Barnstein v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-442-CR

BRIAN DOUGLAS BARNSTEIN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

OPINION

------------

I. Introduction

A jury found Appellant Brian Douglas Barnstein guilty of criminal mischief for shooting and killing a Hereford bull worth more than $1,500.  
See
 
Tex. Penal Code Ann.
 § 28.03(b)(4)(A) (Vernon Supp. 2005).  The jury assessed  Barnstein’s punishment at 180 days’ confinement and a $1,500 fine, and the trial court sentenced him accordingly.  Barnstein raises four complaints on appeal; we will affirm.

II.  Factual Background

One evening, Barnstein and a friend were driving from Barnstein’s deer lease in Coleman County back to Fort Worth when they went on a “cow shooting spree.”  
The pair drove up and down roads, traveling through Hood, Tarrant, Parker, and Johnson Counties, stopping to shoot cattle they saw “as [the] opportunity presented itself.”  At least twelve head of cattle were shot that evening, and the Texas and Southwestern Cattle Raisers Association—an organization that investigates agricultural crimes—began an investigation.  
The Association received an anonymous tip that Barnstein was involved in the shootings. 

Officer Howard Brittain, a peace officer and field inspector with the Association, along with his supervisor, went to Barnstein’s place of employment to investigate Barnstein’s possible involvement in the shootings.  Officer Brittain informed Barnstein of the anonymous tip linking Barnstein to the shootings.  Barnstein made an oral statement and, subsequently, a written statement admitting his participation in the cattle shootings.

Beth Joy, a rancher in Cresson, Texas, found her red and white Hereford bull dead a few days after the “cow shooting spree.”  Officer Brittain went to Ms. Joy’s ranch to investigate.  Ms. Joy’s Hereford bull had been dead approximately four days and was beginning to decompose; Officer Brittain did not find a bullet entry or exit wound on the bull or a bullet casing near the animal.  The State indicted Barnstein for criminal mischief in shooting Ms. Joy’s bull.  After a jury found him guilty, Barnstein perfected this appeal.

III. Motion to Suppress

In his third point, Barnstein complains that the trial court erred by denying his motion to suppress his oral and written statements.  Barnstein alleges that he was in custody when he made his oral and written statements and that they were taken in violation of the Fifth and Fourteenth Amendments to the United States Constitution; article 1, section 19 of the Texas Constitution; article 38.22 of the Texas Code of Criminal Procedure; and 
Miranda v. Arizona
.
(footnote: 1)  The trial court conducted a 
Jackson v. Denno
(footnote: 2) 
hearing and ruled the statements admissible.  The trial court issued findings of fact and conclusions of law in which it found and concluded that Barnstein’s first oral statement was not made as a result of a custodial interrogation and that before making his written statement, Barnstein freely, knowingly, and intentionally waived his rights. We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to the trial court’s ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.

Officer Brittain and his supervisor arrived at Barnstein’s place of employment in plain clothes, but their badges and guns were in plain view. Officer Brittain asked Barnstein where he had been on the evening of the shootings.  Initially Barnstein said he was at home with his wife, but when Officer Brittain asked for his wife’s phone number to verify Barnstein’s story, Barnstein “just looked down at the floor.”  Officer Brittain then said, “Do you want to do this the hard way or the easy way?  I’ve got information that says you were involved in this.  I’ve got tips putting you on the scene.  Basically why don’t you just tell me the truth?”  At this point, the men moved to a different room because Barnstein’s co-workers kept entering and exiting the room they were in, interrupting them.  Barnstein then orally confessed that he and his friend had shot the cattle.  Officer Brittain asked Barnstein if he would make a written statement, and Barnstein agreed.  Officer Brittain read Barnstein his 
Miranda
 rights and gave Barnstein a pre-printed statement form; Barnstein placed his initials next to each warning on the pre-printed statement form, indicating he understood the warning and waived it.  Officer Brittain then took Barnstein to an adjoining room so that he could write his statement without interruption.  Officer Brittain left Barnstein alone in the room but would occasionally “stick [his] head in the door and check on him and see if he wanted or needed anything or had any questions . . .”  Officer Brittain read Barnstein’s written statement at trial:

Me and Andy went to my deer lease in Coleman, and on the way home we stopped and bought some beer and shot one cow.  And it just got to be another one and another one.  I don’t remember the roads or how many.  I do know after we left Coleman we headed towards Cresson.  That’s when it started.  We went towards Granbury and then towards Weatherford.  When we left there, we went towards Cresson again[] and passed it heading towards Fort Worth.  We drove Andy’s truck.  I was a passenger.  I can remember right at [ten] or [eleven] that [were] shot.  I feel very bad about what we did.  I am sorry for the ranchers’ loss.  I do remember a red cow and a tan black cow.  There was a red and white cow and a small calf.  There may have been some that looked similar, but I . . . can’t recall their exact description.  Andy drives a gray Dodge pickup.  We used his 44 magnum rifle and my 30-60 Remington.

We first address Barnstein’s contention that he was in custody when he made his oral and written statements.  Custodial interrogation is questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of their freedom in any significant way.  
Cannon v. State
, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985), 
cert. denied
, 474 U.S. 1110 (1986).  Courts apply a two-step analysis to determine whether an individual is in custody.  First, the court examines all the circumstances surrounding the interrogation to determine whether there was a formal arrest or restraint of freedom of movement to the degree associated with a formal arrest.  
Stansbury v. California
, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528-29 (1994).  This initial determination focuses on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the individual being questioned.  
Id.
 at 323, 114 S. Ct. at 1529.  Second, in light of those circumstances, the court considers whether a reasonable person would have felt free to terminate the interrogation and leave.  
Thompson v. Keohane
, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995).  Courts traditionally consider four factors in making this second determination:  (1) whether probable cause to arrest existed at the time of questioning; (2) the subjective intent of the police; (3) the focus of the investigation; and (4) the subjective belief of the defendant.  
Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); 
Sliva v. State
, 936 S.W.2d 721, 726 (Tex. App.—El Paso 1996, no pet.).
  The determination of custody must be made on an ad hoc basis, after considering all the circumstances.  
Shiflet v. State
, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).

Here, the circumstances surrounding Barnstein’s oral statement support the trial court’s findings and conclusions that Barnstein was not in custody. Officer Brittain and his supervisor went to Barnstein’s place of employment wearing plain clothes, their guns, and their badges to investigate an anonymous tip.  The questioning initially took place in a large, open room, but they moved to a more private room because of traffic in and out of the large room.  In the more private room, Officer Brittain asked Barnstein to tell him the truth, and Barnstein verbally confessed to shooting the cattle.  At no time did Officer Brittain or his supervisor unholster their guns, threaten Barnstein, or make promises of leniency.  Officer Brittain did not handcuff Barnstein or place him under arrest.  Officer Brittain testified that Barnstein was free to leave and to go back to work anytime he wanted.  

Barnstein claims that he was placed in custody when Officer Brittain moved him to the more private room.  He claims that this restricted his freedom of movement.  Officer Brittain testified, however, that the group moved to a more private room to keep their conversation private; Officer Brittain explained, “I don’t think [Barnstein] wanted anybody walking in on us any more than I did.”  Barnstein also contends he was in custody because he was the focus of Officer Brittain’s investigation.  Officer Brittain testified, however, that he was simply investigating an anonymous tip.  Probable cause did not exist to arrest Barnstein based only on the anonymous tip.  
See State v. Steelman
, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002).

Carefully considering all of the circumstances surrounding Barnstein’s interrogation, we hold that a reasonable person in Barnstein’s situation would not have felt that his freedom of movement was restrained to a degree associated with formal arrest.  
See Stansbury,
 511 U.S. at 320, 114 S. Ct. at 1528-29.  Thus, the warnings required by 
Miranda
 and article 38.22 did not apply to the oral statement, and the trial court properly admitted the oral statement into evidence.  Moreover, because we hold that there was no custodial interrogation that would require the officers to give Barnstein the warnings required by 
Miranda 
and article 38.22, Barnstein’s claim that the trial court should have suppressed his subsequent written statement as the fruit of the initial unwarned oral statement must also fail.
(footnote: 3) 

After reviewing the record under the appropriate standard of review, we hold that it supports the trial court’s conclusion that Barnstein’s oral statement was not the result of a custodial interrogation and therefore, that the trial court did not err by refusing to suppress Barnstein’s oral and written statements.  
See
 
Jeffley v. State
, 38 S.W.3d 847, 853 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).  We overrule Barnstein’s third point.

IV.
 Factual Sufficiency of The Evidence
 

In his first and second points, Barnstein argues that the evidence is factually insufficient to support his conviction.
(footnote: 4)  Specifically, Barnstein contends that the evidence is factually insufficient to establish (1) that Ms. Joy’s bull died as a result of a gunshot wound, (2) that he was the person who shot the animal, if it was in fact shot, (3) that the law of parties is applicable, and (4) that the value of the bull was at least $1,500.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Barnstein contends that the State failed to prove that Ms. Joy’s bull died from a gunshot wound.  The most important and relevant evidence that supports Barnstein’s contention is that approximately four days after the bull’s death Officer Brittain could not find a bullet hole on, or a bullet or casing near, the bull.  
Nonetheless, this evidence does not outweigh the evidence that the bull did in fact die from a gunshot wound.  Ms. Joy testified that she owned a ranch in Cresson, Texas, that she owned a red and white Hereford bull, that the bull was found dead close to the road, and that she saw a bullet hole on the animal.  Barnstein also admitted in his written statement that he and his friend drove around and shot about ten or eleven head of cattle, that at one point they “headed towards Cresson,” and that he remembered that they had shot “a red and white cow.”  Viewing all the evidence in a neutral light, a rational jury could conclude beyond a reasonable doubt that the bull died from a gunshot wound. 
See 
Zuniga, 
144 S.W.3d at 481.  
 

Barnstein next contends that the State failed to prove that he was the person who shot the bull.  Barnstein argues that even considering his oral and written statements, he never admitted that he fired the gun.  But the court’s charge included an instruction on the law of parties: 

All persons are parties to an offense who are guilty of acting together in the commission of the offense.  A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  Mere presence alone will not constitute one a party to an offense.

Thus, the State was not required to prove that Barnstein himself shot the bull; proof that he acted as a party is sufficient.  The evidence concerning Barnstein’s conduct as a party includes his statements, which use the word “we” to describe the pair’s actions that evening.  Barnstein explained that “we stopped and bought some beer and shot one cow.”  He further stated that “we” used two guns, one belonging to his friend and one belonging to him.  Viewing all the evidence in a neutral light, a rational jury could conclude that Barnstein shot the bull or, in the alternative, that Barnstein is criminally responsible for the shooting under the law of parties.  
See id.

Barnstein also contends that the State failed to prove that the value of the bull was at least $1,500.  Barnstein argues that the State failed to put forth any evidence of the bull’s market value at the time of its death.  Ms. Joy testified, however, that she purchased the bull two years before Barnstein’s trial for $1,500 and that the bull had increased in value since then.  She explained that she used the bull for breeding purposes and that the bull produced good-looking, low-birth-weight calves.  Ms. Joy said that low-birth-weight calves are desirable in the breeding business because heavier calves sometimes cause difficult births and ruin breeding cows.  Based on this evidence, a rational jury could conclude that the bull’s value at the time it died was at least $1,500.  
See id.

We hold that factually sufficient evidence supports Barnstein’s conviction, and therefore, we overrule Barnstein’s first and second points.

V.
 Notice of Intent to Use Extraneous Offenses

At trial, the State presented photographs of dead cattle that had been shot in various counties and likewise presented testimony from five cattle owners, who all testified that they found one or more head of cattle dead on their land shortly after Barnstein and his friend went on their alleged cattle shooting spree.  In his fourth point, Barnstein contends that the trial court erred by admitting the testimony of the five cattle owners concerning the cattle shot and killed on their property because the State failed to give sufficient notice under rule 404(b) of its intent to introduce these acts.  

On December 22, 2003, Barnstein requested that the State provide notice at least thirty days prior to trial of its intent to offer into evidence other crimes, wrongs, or acts under 
Texas Rule of Evidence 404(b).  In a letter dated August 24, 2004, the State notified Barnstein of its intent to offer evidence that Barnstein shot other cattle in addition to Ms. Joy’s bull.
 
 On August 27, 2004, Barnstein filed a written objection to the admissibility of the extraneous shootings, a request for a procedural determination by the trial court with findings of fact and conclusions of law, and a request for a limiting instruction. Trial began on August 30, 2004, six days after the State sent notice to Barnstein’s trial attorney of its intent to offer evidence of the extraneous shootings. 

At a hearing on the extraneous offense issue, the State alleged that even if it failed to provide Barnstein with reasonable 
written 
notice, Barnstein had 
oral 
notice of the State’s intent to use the extraneous acts at trial.  The State’s attorney alleged that he and Barnstein’s trial attorney had a telephone conversation sometime before the last jury trial setting, which took place in late June, in which they discussed the State’s intent to introduce at trial evidence of the other cattle shootings. 
 
The State’s attorney related to the trial court the conversation he had with Barnstein’s trial attorney:

[W]e specifically talked about whether or not [the other shootings] would be admissible.  [Barnstein’s trial attorney] told me, ‘No, you’re not going to be able to get that in.  That violates Rule 404(b).’  I said, ‘No, I think I will, and, you know, we’ll see what happens when we try the case.
’

The State’s attorney also informed the trial court that he gave Barnstein’s trial attorney a copy of Officer Brittain’s offense report, which included an investigation of other cattle shootings in various counties.  

At the conclusion of the attorneys’ arguments, the trial court found that the State gave reasonable notice under rule 404(b) of its intent to introduce evidence of the other shootings and that the probative value of the evidence outweighed any prejudicial effect.  The trial court then denied Barnstein’s rule 404(b) motion.  Barnstein requested a running objection to the 404(b) evidence presented during trial, and the trial court granted his request.  

The State argues that the trial court properly admitted evidence concerning the other cattle shootings because all of the shootings were part of “one continuous spree of shooting cows” and were, therefore, same transaction contextual evidence, for which no notice is required.  In the alternative, the State argues that if the shootings are extraneous acts, the State gave proper notice under rule 404(b).    

Rule 404(b) allows admission of certain extraneous offenses provided that, upon timely request by the accused in a criminal case, the State gives reasonable notice in advance of trial of its intent to introduce in its case-in-chief evidence of other crimes, wrongs, or acts other than that arising from the same transaction.  
Tex. R. Evid
. 404(b).  The purpose of this notice provision is “to adequately apprise the defendant of the extraneous offenses the State intends to introduce at trial.”  
Self v. State
, 860 S.W.2d 261, 264 (Tex. App.—Fort Worth 1993, pet. ref’d).  Thus, the main purpose of the rule is to prevent surprise.  
See Cole v. State
, 987 S.W.2d 893, 897 (Tex. App.—Fort Worth 1998, pet. ref’d); 
Self
, 860 S.W.2d at 264.  Although it is not the only factor to consider, “the lack of surprise is a valid and important consideration in assessing the reasonableness of notice.”
  Webb v. State
, 36 S.W.3d 164, 178 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).

Rule 404(b) does not set forth a formal method of conveying notice.  
See 
Tex. R. Evid
. 404(b)
;
 Hayden v. State
, 66 S.W.3d 269, 273 n.16 (Tex. Crim. App. 2001).
 
 However, it does not expressly require written notice.  
See 
Tex. R. Evid
. 404(b)
; Chimney v. State
, 6 S.W.3d 681, 694-95 (Tex. App.—Waco 1999, pet ref’d); 
Neuman v. State
, 951 S.W.2d 538, 540 (Tex. App.—Austin 1997, no pet.); 
Woodard v. State
, 931 S.W.2d 747, 749 (Tex. App.—Waco 1996, no pet.).  Written notice is preferred though, and when the State relies on oral notice to satisfy the notice requirement of rule 404(b), it should describe the content of that notice to the trial court on the record.  
See Chimney
, 6 S.W.3d at 695, 697.  

Although an open file policy will not constitute reasonable notice, the State may give reasonable notice by delivery of witness statements to the defendant, depending on the circumstances.  
See Hayden, 
66 S.W.3d at 271, 273 n.16 (holding that delivery of witness statements to defense provided reasonable notice when defendant did not dispute that he had actual notice but only alleged that form of notice did not satisfy rule 404(b)); 
see also Waltmon v. State
, 76 S.W.3d 148, 157-58 (Tex. App.—Beaumont 2002, no pet.) (holding that delivery of witness statements constitutes reasonable notice when delivered shortly after receiving request for notice).
  

In the present case, the trial court was free to believe the State’s attorney’s allegations regarding his telephone conversation with Barnstein’s trial attorney, and Barnstein’s attorney did not dispute this conversation.  
The State provided this oral notice over two months before trial began.  Moreover, prior to trial, the State provided Barnstein with Officer Brittain’s offense report, which included information concerning the various shootings.
(footnote: 5)  These facts are sufficient to show that the State provided reasonable notice such that Barnstein could not have been surprised when the State attempted to introduce the extraneous acts.
(footnote: 6)  Barnstein’s complaints are directed more toward the allegedly improper form of the notice, rather than to any alleged lack of actual notice.  But rule 404(b)’s purpose is to prevent surprise, and the record shows that Barnstein was not surprised.  
See Cole
, 987 S.W.2d at 897; 
Self
, 860 S.W.2d at 264.  Therefore, we cannot hold that the trial court erred by determining that the State provided reasonable notice under rule 404(b) of its intent to introduce the extraneous bad acts.  
See Roethel v. State
, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.).  Accordingly, we hold that the trial court did not abuse its discretion in admitting evidence of the other cattle shootings.  We overrule Barnstein’s fourth point.

VI. Conclusion

Having overruled each of Barnstein’s four points, we affirm the trial court’s judgment. 

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 12, 2006

FOOTNOTES
1:
U.S. Const
 amends. V, XIV; 
Tex. Const. 
 art. I, § 19; 
Tex. Code Crim. Proc. Ann.
 art. 38.22 (Vernon 2005); 
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).  

2:
378 U.S. 368, 84 S. Ct. 1774 (1964).

3:
In a supplemental letter brief, Barnstein contends that the recent case of 
Missouri v. Seibert
, 542 U.S. 600, 124 S. Ct. 2601 (2004) requires suppression of his oral and written statements.  Because we have held that Barnstein was not in custody when he made his oral statement and he was 
Mirandized
 before he made his written statement, 
Seibert
 is inapplicable.

4:
Barnstein’s first point is actually framed as an argument that the verdict is against the great weight and preponderance of the evidence.  But that standard applies only when the complaining party has the burden of proof at trial.  
See Zuliani v. State
, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003).  Here, Barnstein did not plead an affirmative defense or have the burden of proof on any issue.  Consequently, we treat his first issue as challenging the factual sufficiency of the evidence.   

5:
We do not hold that the State’s providing Barnstein with the offense report constituted reasonable notice under rule 404(b).  We point out this fact only to further show Barnstein’s lack of surprise by the State’s introduction of the extraneous acts at trial.  
See Webb
, 36 S.W.3d at 178.

6:
Thus, because we find sufficient notice under rule 404(b), we do not address whether the State’s written response constituted reasonable notice or whether the other cattle shootings were same transaction contextual evidence.