COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-04-442-CR

 

 

BRIAN DOUGLAS BARNSTEIN                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction

A jury found Appellant Brian Douglas Barnstein
guilty of criminal mischief for shooting and killing a Hereford bull worth more
than $1,500.  See Tex. Penal Code Ann. '
28.03(b)(4)(A) (Vernon Supp. 2005).  The
jury assessed  Barnstein=s
punishment at 180 days= confinement and a $1,500 fine,
and the trial court sentenced him accordingly. 
Barnstein raises four complaints on appeal; we will affirm.








II.  Factual Background

One evening, Barnstein and a friend were driving
from Barnstein=s deer lease in Coleman County
back to Fort Worth when they went on a Acow
shooting spree.@ 
The pair drove up and down roads, traveling through Hood, Tarrant,
Parker, and Johnson Counties, stopping to shoot cattle they saw Aas [the]
opportunity presented itself.@  At least twelve head of cattle were shot that
evening, and the Texas and Southwestern Cattle Raisers AssociationCan
organization that investigates agricultural crimesCbegan an
investigation.  The Association received
an anonymous tip that Barnstein was involved in the shootings. 

Officer Howard Brittain, a peace officer and
field inspector with the Association, along with his supervisor, went to
Barnstein=s place of employment to
investigate Barnstein=s possible involvement in the
shootings.  Officer Brittain informed
Barnstein of the anonymous tip linking Barnstein to the shootings.  Barnstein made an oral statement and, subsequently,
a written statement admitting his participation in the cattle shootings.








Beth Joy, a rancher in Cresson, Texas, found her
red and white Hereford bull dead a few days after the Acow
shooting spree.@ 
Officer Brittain went to Ms. Joy=s ranch
to investigate.  Ms. Joy=s
Hereford bull had been dead approximately four days and was beginning to
decompose; Officer Brittain did not find a bullet entry or exit wound on the
bull or a bullet casing near the animal. 
The State indicted Barnstein for criminal mischief in shooting Ms. Joy=s
bull.  After a jury found him guilty,
Barnstein perfected this appeal.

III. Motion to Suppress








In his third point, Barnstein complains that the
trial court erred by denying his motion to suppress his oral and written
statements.  Barnstein alleges that he
was in custody when he made his oral and written statements and that they were
taken in violation of the Fifth and Fourteenth Amendments to the United States
Constitution; article 1, section 19 of the Texas Constitution; article 38.22 of
the Texas Code of Criminal Procedure; and Miranda v. Arizona.[1]  The trial court conducted a Jackson v.
Denno[2]
hearing and ruled the statements admissible.  The trial court issued findings of fact and
conclusions of law in which it found and concluded that Barnstein=s first
oral statement was not made as a result of a custodial interrogation and that
before making his written statement, Barnstein freely, knowingly, and
intentionally waived his rights.        We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  At a suppression
hearing, the trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given to their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  Therefore, we
give almost total deference to the trial court=s ruling
on (1) questions of historical fact and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644,
652-53 (Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62.  However, we review de novo a trial court=s
rulings on mixed questions of law and fact if they do not turn on the
credibility and demeanor of witnesses.  Johnson,
68 S.W.3d at 652-53.








Officer Brittain and his supervisor arrived at
Barnstein=s place of employment in plain
clothes, but their badges and guns were in plain view. Officer Brittain asked
Barnstein where he had been on the evening of the shootings.  Initially Barnstein said he was at home with
his wife, but when Officer Brittain asked for his wife=s phone
number to verify Barnstein=s story,
Barnstein Ajust looked down at the floor.@  Officer Brittain then said, ADo you
want to do this the hard way or the easy way? 
I=ve got
information that says you were involved in this.  I=ve got
tips putting you on the scene.  Basically
why don=t you
just tell me the truth?@ 
At this point, the men moved to a different room because Barnstein=s
co-workers kept entering and exiting the room they were in, interrupting
them.  Barnstein then orally confessed
that he and his friend had shot the cattle. 
Officer Brittain asked Barnstein if he would make a written statement,
and Barnstein agreed.  Officer Brittain
read Barnstein his Miranda rights and gave Barnstein a pre-printed
statement form; Barnstein placed his initials next to each warning on the
pre-printed statement form, indicating he understood the warning and waived
it.  Officer Brittain then took Barnstein
to an adjoining room so that he could write his statement without interruption.  Officer Brittain left Barnstein alone in the
room but would occasionally Astick
[his] head in the door and check on him and see if he wanted or needed anything
or had any questions . . .@  Officer Brittain read Barnstein=s
written statement at trial:








Me and Andy went to my deer lease in Coleman, and
on the way home we stopped and bought some beer and shot one cow.  And it just got to be another one and another
one.  I don=t
remember the roads or how many.  I do
know after we left Coleman we headed towards Cresson.  That=s when
it started.  We went towards Granbury and
then towards Weatherford.  When we left
there, we went towards Cresson again[] and passed it heading towards Fort
Worth.  We drove Andy=s
truck.  I was a passenger.  I can remember right at [ten] or [eleven]
that [were] shot.  I feel very bad about
what we did.  I am sorry for the ranchers=
loss.  I do remember a red cow and a tan
black cow.  There was a red and white cow
and a small calf.  There may have been
some that looked similar, but I . . . can=t recall
their exact description.  Andy drives a
gray Dodge pickup.  We used his 44 magnum
rifle and my 30-60 Remington.








We first address Barnstein=s
contention that he was in custody when he made his oral and written
statements.  Custodial interrogation is
questioning initiated by law enforcement after a person has been taken into
custody or otherwise deprived of their freedom in any significant way.  Cannon v. State, 691 S.W.2d 664, 671
(Tex. Crim. App. 1985), cert. denied, 474 U.S. 1110 (1986).  Courts apply a two‑step analysis to
determine whether an individual is in custody. 
First, the court examines all the circumstances surrounding the
interrogation to determine whether there was a formal arrest or restraint of
freedom of movement to the degree associated with a formal arrest.  Stansbury v. California, 511 U.S. 318,
322, 114 S. Ct. 1526, 1528-29 (1994). 
This initial determination focuses on the objective circumstances of the
interrogation, not on the subjective views harbored by either the interrogating
officers or the individual being questioned. 
Id. at 323, 114 S. Ct. at 1529. 
Second, in light of those circumstances, the court considers whether a
reasonable person would have felt free to terminate the interrogation and
leave.  Thompson v. Keohane, 516
U.S. 99, 112, 116 S. Ct. 457, 465 (1995). 
Courts traditionally consider four factors in making this second
determination:  (1) whether probable
cause to arrest existed at the time of questioning; (2) the subjective intent
of the police; (3) the focus of the investigation; and (4) the subjective
belief of the defendant.  Dowthitt v.
State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); Sliva v. State,
936 S.W.2d 721, 726 (Tex. App.CEl Paso
1996, no pet.).  The determination of
custody must be made on an ad hoc basis, after considering all the
circumstances.  Shiflet v. State,
732 S.W.2d 622, 629 (Tex. Crim. App. 1985).








Here, the circumstances surrounding Barnstein=s oral
statement support the trial court=s
findings and conclusions that Barnstein was not in custody. Officer Brittain
and his supervisor went to Barnstein=s place
of employment wearing plain clothes, their guns, and their badges to
investigate an anonymous tip.  The
questioning initially took place in a large, open room, but they moved to a
more private room because of traffic in and out of the large room.  In the more private room, Officer Brittain
asked Barnstein to tell him the truth, and Barnstein verbally confessed to shooting
the cattle.  At no time did Officer
Brittain or his supervisor unholster their guns, threaten Barnstein, or make
promises of leniency.  Officer Brittain
did not handcuff Barnstein or place him under arrest.  Officer Brittain testified that Barnstein was
free to leave and to go back to work anytime he wanted.  

Barnstein claims that he was placed in custody
when Officer Brittain moved him to the more private room.  He claims that this restricted his freedom of
movement.  Officer Brittain testified,
however, that the group moved to a more private room to keep their conversation
private; Officer Brittain explained, AI don=t think
[Barnstein] wanted anybody walking in on us any more than I did.@  Barnstein also contends he was in custody
because he was the focus of Officer Brittain=s
investigation.  Officer Brittain
testified, however, that he was simply investigating an anonymous tip.  Probable cause did not exist to arrest
Barnstein based only on the anonymous tip. 
See State v. Steelman, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002).








Carefully considering all of the circumstances
surrounding Barnstein=s interrogation, we hold that a
reasonable person in Barnstein=s
situation would not have felt that his freedom of movement was restrained to a
degree associated with formal arrest.  See
Stansbury, 511 U.S. at 320, 114 S. Ct. at 1528-29.  Thus, the warnings required by Miranda
and article 38.22 did not apply to the oral statement, and the trial court
properly admitted the oral statement into evidence.  Moreover, because we hold that there was no
custodial interrogation that would require the officers to give Barnstein the
warnings required by Miranda and article 38.22, Barnstein=s claim
that the trial court should have suppressed his subsequent written statement as
the fruit of the initial unwarned oral statement must also fail.[3]


After reviewing the record under the appropriate
standard of review, we hold that it supports the trial court=s
conclusion that Barnstein=s oral statement was not the
result of a custodial interrogation and therefore, that the trial court did not
err by refusing to suppress Barnstein=s oral
and written statements.  See Jeffley
v. State, 38 S.W.3d 847, 853 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref'd).  We
overrule Barnstein=s third point.

IV.
Factual Sufficiency of The Evidence 








In his first and second points, Barnstein argues
that the evidence is factually insufficient to support his conviction.[4]  Specifically, Barnstein contends that the
evidence is factually insufficient to establish (1) that Ms. Joy=s bull
died as a result of a gunshot wound, (2) that he was the person who shot the
animal, if it was in fact shot, (3) that the law of parties is applicable, and
(4) that the value of the bull was at least $1,500.








In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party.  See
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.  Id. at 484.  There are two ways evidence may be factually
insufficient:  (1) the evidence
supporting the verdict or judgment, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment, weighing
all of the evidence, the contrary evidence is so strong that guilt cannot be
proven beyond a reasonable doubt.  Id.
at 484-85.  AThis
standard acknowledges that evidence of guilt can >preponderate= in
favor of conviction but still be insufficient to prove the elements of the
crime beyond a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
 In performing a factual
sufficiency review, we are to give deference to the fact finder=s
determinations, including determinations involving the credibility and demeanor
of witnesses.  Id. at 481; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that
of the fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency review requires an
examination of all the evidence.  Id.
at 484, 486-87.  An opinion addressing
factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).








Barnstein contends that the State failed to prove
that Ms. Joy=s bull died from a gunshot
wound.  The most important and relevant
evidence that supports Barnstein=s
contention is that approximately four days after the bull=s death
Officer Brittain could not find a bullet hole on, or a bullet or casing near,
the bull.  Nonetheless, this evidence
does not outweigh the evidence that the bull did in fact die from a gunshot
wound.  Ms. Joy testified that she owned
a ranch in Cresson, Texas, that she owned a red and white Hereford bull, that
the bull was found dead close to the road, and that she saw a bullet hole on
the animal.  Barnstein also admitted in his
written statement that he and his friend drove around and shot about ten or
eleven head of cattle, that at one point they Aheaded
towards Cresson,@ and that he remembered that
they had shot Aa red and white cow.@  Viewing all the evidence in a neutral light,
a rational jury could conclude beyond a reasonable doubt that the bull died
from a gunshot wound. See Zuniga, 144 S.W.3d at 481.   

Barnstein next contends that the State failed to
prove that he was the person who shot the bull. 
Barnstein argues that even considering his oral and written statements,
he never admitted that he fired the gun. 
But the court=s charge included an instruction
on the law of parties: 

All persons are parties to an offense who are guilty of acting
together in the commission of the offense. 
A person is criminally responsible as a party to an offense if the
offense is committed by his own conduct, by the conduct of another for which he
is criminally responsible, or both.

 

A person is criminally responsible for an offense committed by the
conduct of another if, acting with the intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense. 
Mere presence alone will not constitute one a party to an offense.

 








Thus, the State was not required to prove that Barnstein himself shot the
bull; proof that he acted as a party is sufficient.  The evidence concerning Barnstein=s
conduct as a party includes his statements, which use the word Awe@ to
describe the pair=s actions that evening.  Barnstein explained that Awe
stopped and bought some beer and shot one cow.@  He further stated that Awe@ used
two guns, one belonging to his friend and one belonging to him.  Viewing all the evidence in a neutral light,
a rational jury could conclude that Barnstein shot the bull or, in the
alternative, that Barnstein is criminally responsible for the shooting under
the law of parties.  See id.

Barnstein also contends that the State failed to
prove that the value of the bull was at least $1,500.  Barnstein argues that the State failed to put
forth any evidence of the bull=s market
value at the time of its death.  Ms. Joy
testified, however, that she purchased the bull two years before Barnstein=s trial
for $1,500 and that the bull had increased in value since then.  She explained that she used the bull for
breeding purposes and that the bull produced good-looking, low-birth-weight
calves.  Ms. Joy said that
low-birth-weight calves are desirable in the breeding business because heavier
calves sometimes cause difficult births and ruin breeding cows.  Based on this evidence, a rational jury could
conclude that the bull=s value at the time it died was at
least $1,500.  See id.

We hold that factually sufficient evidence
supports Barnstein=s conviction, and therefore, we
overrule Barnstein=s first and second points.

V. Notice
of Intent to Use Extraneous Offenses








At trial, the State presented photographs of dead
cattle that had been shot in various counties and likewise presented testimony
from five cattle owners, who all testified that they found one or more head of
cattle dead on their land shortly after Barnstein and his friend went on their
alleged cattle shooting spree.  In his
fourth point, Barnstein contends that the trial court erred by admitting the
testimony of the five cattle owners concerning the cattle shot and killed on
their property because the State failed to give sufficient notice under rule
404(b) of its intent to introduce these acts. 


On December 22, 2003, Barnstein requested that
the State provide notice at least thirty days prior to trial of its intent to
offer into evidence other crimes, wrongs, or acts under Texas Rule of Evidence
404(b).  In a letter dated August 24,
2004, the State notified Barnstein of its intent to offer evidence that
Barnstein shot other cattle in addition to Ms. Joy=s bull.
 On August 27, 2004, Barnstein filed
a written objection to the admissibility of the extraneous shootings, a request
for a procedural determination by the trial court with findings of fact and
conclusions of law, and a request for a limiting instruction. Trial began on August
30, 2004, six days after the State sent notice to Barnstein=s trial
attorney of its intent to offer evidence of the extraneous shootings. 








At a hearing on the extraneous offense issue, the
State alleged that even if it failed to provide Barnstein with reasonable written
notice, Barnstein had oral notice of the State=s intent
to use the extraneous acts at trial.  The
State=s
attorney alleged that he and Barnstein=s trial
attorney had a telephone conversation sometime before the last jury trial
setting, which took place in late June, in which they discussed the State=s intent
to introduce at trial evidence of the other cattle shootings.  The State=s
attorney related to the trial court the conversation he had with Barnstein=s trial
attorney:

[W]e specifically talked
about whether or not [the other shootings] would be admissible.  [Barnstein=s trial attorney] told me, >No, you=re not going to be able
to get that in.  That violates Rule
404(b).=  I said, >No, I think I will, and, you know, we=ll see what happens when
we try the case.=

 

The State=s attorney also informed the
trial court that he gave Barnstein=s trial
attorney a copy of Officer Brittain=s
offense report, which included an investigation of other cattle shootings in
various counties.  

At the conclusion of the attorneys=
arguments, the trial court found that the State gave reasonable notice under
rule 404(b) of its intent to introduce evidence of the other shootings and that
the probative value of the evidence outweighed any prejudicial effect.  The trial court then denied Barnstein=s rule
404(b) motion.  Barnstein requested a
running objection to the 404(b) evidence presented during trial, and the trial
court granted his request.  








The State argues that the trial court properly
admitted evidence concerning the other cattle shootings because all of the
shootings were part of Aone continuous spree of shooting
cows@ and
were, therefore, same transaction contextual evidence, for which no notice is
required.  In the alternative, the State
argues that if the shootings are extraneous acts, the State gave proper notice
under rule 404(b).    

Rule 404(b) allows admission of certain
extraneous offenses provided that, upon timely request by the accused in a
criminal case, the State gives reasonable notice in advance of trial of its
intent to introduce in its case-in-chief evidence of other crimes, wrongs, or
acts other than that arising from the same transaction.  Tex.
R. Evid. 404(b).  The purpose of
this notice provision is Ato adequately apprise the
defendant of the extraneous offenses the State intends to introduce at trial.@  Self v. State, 860 S.W.2d 261, 264
(Tex. App.CFort Worth 1993, pet. ref=d).  Thus, the main purpose of the rule is to
prevent surprise.  See Cole v. State,
987 S.W.2d 893, 897 (Tex. App.CFort
Worth 1998, pet. ref=d); Self, 860 S.W.2d at
264.  Although it is not the only factor
to consider, Athe lack of surprise is a valid
and important consideration in assessing the reasonableness of notice.@  Webb v. State, 36
S.W.3d 164, 178 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).








Rule 404(b) does not set forth a formal method of
conveying notice.  See Tex. R. Evid. 404(b); Hayden v.
State, 66 S.W.3d 269, 273 n.16 (Tex. Crim. App. 2001).  However, it does not expressly require written
notice.  See Tex. R. Evid. 404(b); Chimney v.
State, 6 S.W.3d 681, 694-95 (Tex. App.CWaco
1999, pet ref=d); Neuman v. State, 951
S.W.2d 538, 540 (Tex. App.CAustin
1997, no pet.); Woodard v. State, 931 S.W.2d 747, 749 (Tex. App.CWaco
1996, no pet.).  Written notice is
preferred though, and when the State relies on oral notice to satisfy the
notice requirement of rule 404(b), it should describe the content of that
notice to the trial court on the record. 
See Chimney, 6 S.W.3d at 695, 697.  

Although an open file policy will not constitute
reasonable notice, the State may give reasonable notice by delivery of witness
statements to the defendant, depending on the circumstances.  See Hayden, 66 S.W.3d at 271, 273 n.16
(holding that delivery of witness statements to defense provided reasonable
notice when defendant did not dispute that he had actual notice but only
alleged that form of notice did not satisfy rule 404(b)); see also Waltmon
v. State, 76 S.W.3d 148, 157-58 (Tex. App.CBeaumont
2002, no pet.) (holding that delivery of witness statements constitutes
reasonable notice when delivered shortly after receiving request for
notice).  








In the present case, the trial court was free to
believe the State=s attorney=s
allegations regarding his telephone conversation with Barnstein=s trial
attorney, and Barnstein=s attorney did not dispute this
conversation.  The State provided this
oral notice over two months before trial began. 
Moreover, prior to trial, the State provided Barnstein with Officer
Brittain=s
offense report, which included information concerning the various shootings.[5]  These facts are sufficient to show that the
State provided reasonable notice such that Barnstein could not have been
surprised when the State attempted to introduce the extraneous acts.[6]  Barnstein=s
complaints are directed more toward the allegedly improper form of the notice,
rather than to any alleged lack of actual notice.  But rule 404(b)=s
purpose is to prevent surprise, and the record shows that Barnstein was not
surprised.  See Cole, 987 S.W.2d
at 897; Self, 860 S.W.2d at 264. 
Therefore, we cannot hold that the trial court erred by determining that
the State provided reasonable notice under rule 404(b) of its intent to
introduce the extraneous bad acts.  See
Roethel v. State, 80 S.W.3d 276, 280 (Tex. App.CAustin
2002, no pet.).  Accordingly, we hold
that the trial court did not abuse its discretion in admitting evidence of the
other cattle shootings.  We overrule
Barnstein=s fourth point.

 

 








VI. Conclusion

Having overruled each of Barnstein=s four
points, we affirm the trial court=s
judgment.   

 

SUE
WALKER

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: January 12,
2006











[1]U.S.
Const
amends. V, XIV; Tex. Const.  art. I, ' 19; Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon 2005); Miranda v. Arizona,
384 U.S. 436, 86 S. Ct. 1602 (1966).  





[2]378 U.S. 368, 84 S. Ct.
1774 (1964).





[3]In a supplemental letter
brief, Barnstein contends that the recent case of Missouri v. Seibert,
542 U.S. 600, 124 S. Ct. 2601 (2004) requires suppression of his oral and
written statements.  Because we have held
that Barnstein was not in custody when he made his oral statement and he was Mirandized
before he made his written statement, Seibert is inapplicable.





[4]Barnstein=s first point is actually
framed as an argument that the verdict is against the great weight and
preponderance of the evidence.  But that
standard applies only when the complaining party has the burden of proof at
trial.  See Zuliani v. State, 97
S.W.3d 589, 593 (Tex. Crim. App. 2003). 
Here, Barnstein did not plead an affirmative defense or have the burden
of proof on any issue.  Consequently, we
treat his first issue as challenging the factual sufficiency of the
evidence.   





[5]We do not hold that the
State=s providing Barnstein
with the offense report constituted reasonable notice under rule 404(b).  We point out this fact only to further show
Barnstein=s lack of surprise by the
State=s introduction of the
extraneous acts at trial.  See Webb,
36 S.W.3d at 178.





[6]Thus, because we find
sufficient notice under rule 404(b), we do not address whether the State=s written response
constituted reasonable notice or whether the other cattle shootings were same
transaction contextual evidence.