

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-12-00025-CR
_____


STEDMON DEWBERRY, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 11F0763-005



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Found guilty by a jury for the murder of Latasha Antwine pursuant to Section 19.02(b)(2) of the Texas Penal Code,[1] and sentenced to fifty years' confinement, Stedman Dewberry has appealed his conviction.

On appeal, Dewberry raises one point of error, contending that there is legally insufficient evidence to support the verdict. We affirm the trial court's judgment.

Factual Background

A little after 6:00 p.m. on August 28, 2010, Christopher Daly picked up Stedmon Dewberry in his car and drove to Grady T. Wallace Park in Texarkana. A car show had been held at the park that day, and anywhere from fifty to several hundred people were present. After Dewberry arrived at the park, there was a physical altercation between Dewberry and Brioni Dansby, a person with whom Dewberry had a history of hostility and previous physical encounters. During the altercation, Dansby knocked Dewberry down and the fight was broken up.

After the fight, Daly drove Dewberry to an apartment, where they stayed for about five minutes before returning to the park. As they returned to the park, Daly noticed that Dewberry had a black and chrome semi-automatic handgun. As they arrived, Dewberry said he was "going to take care of the shit." Dewberry exited the automobile, walked to the front of it, said a few words to Dansby, drew the gun, and began shooting at Dansby. Dansby, also armed, returned

_____

[1]The indictment also charged Dewberry with murder under the felony murder statute, Texas Penal Code § 19.02(b)(3), but that charge was not submitted to the jury. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011).

2

Dewberry's fire. Dewberry hurried back into Daly's car (which ended up with several bullet holes in it) and they drove away. After the exchange of gunfire ceased, Dansby also got into a car and left the park. In a display of remarkably poor marksmanship, neither Dewberry nor Dansby was struck in the fusillade of bullets exchanged between them, despite the fact they were apparently only several yards apart.

There was conflicting testimony whether Brandon Antwine (the brother of the shooting victim) was also shooting at Dewberry that night. Paige Tasby was at the park that night with friends and had been there for a couple of hours prior to the shooting. She testified that Dansby and Brandon Antwine were both shooting at Dewberry that night and that they continued shooting at the car in which Dewberry left the park. However, Joseph Hawkins and other witnesses testified that only two people were shooting.

During the gunfight, an errant bullet struck Latasha Antwine, who was at the park with her brother, Brandon. According to the medical testimony, the bullet entered the lower right side of her back and exited on the left side of her abdomen, causing a wound which proved to be mortal. There is conflicting testimony as to her location vis-à-vis the participants in the gunfight at the time the fatal bullet was fired; some of the testimony placed her between the combatants and some showed her to be located behind Dansby.

There is also some conflicting evidence regarding how many shots were fired. Tasby testified that "a whole bunch" of shots were fired, "more than fifteen," but Hawkins testified that there were only about five shots fired. Only six shell casings, three of which were .40 caliber

casings and three of which were nine millimeter casings, and a part of one bullet were located at the scene by police investigators.

The gun used by Dansby was a .40 caliber and the only ballistics tests conducted in this case confirmed that the .40 caliber was fired at the park that night. There is conflicting evidence regarding exactly what kind of gun Dewberry used in the shooting. Even though Dewberry said in a statement to police that he had dropped his gun (which he said was a .22 caliber revolver) in a ditch at the park as he fled the scene, his gun was never located.

Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

4

1997).  The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Application

In his sole point of error, Dewberry contends that the evidence supporting his conviction is legally insufficient.

Dewberry was charged with murder under the transferred intent doctrine, which holds a person criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked was that a different person was injured, harmed, or otherwise affected.  *See* TEX. PENAL CODE ANN. §§ 6.04(b)(2), 19.02(b)(2) (West 2011).  "This statutory principle of 'transferred intent' is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person . . . ." *Manrique v. State*, 994 S.W.2d 640, 647 (Tex. Crim. App. 1999) (McCormick, J., concurring).  A classic example of the application of the transferred intent doctrine is "the act of firing [a gun] at an intended victim while that person is in a group of other persons.  If the intended person is killed, the offense is murder.  If a different person in the group is killed, the offense is murder pursuant to Texas Penal Code § 6.04(b)(2) . . . ." *Roberts v. State*, 273 S.W.3d 322, 330 (Tex. Crim. App. 2008) (addressing transferred intent in capital murder case where requisite mental state was specific intent to kill); *Chimney v. State*, 6 S.W.3d 681, 700 (Tex. App.—Waco 1999, pet. ref'd).  Under Section 6.04(b) of the Texas Penal Code, a

5

defendant can be held "criminally responsible" (i.e., guilty) for the death of another even if he did not intend to harm the victim so long as he caused the actual victim's death while acting with the intent to kill a different person. TEX. PENAL CODE ANN. § 6.04(b) (West 2011).

Here, the indictment alleged that Dewberry "did then and there intentionally, with intent to cause serious bodily injury to Brioni Dansby, commit an act clearly dangerous to human life, namely, discharge a firearm at Brioni Dansby, which caused the death of Latasha Antwine." Employing the hypothetically-correct jury charge analysis, in order for the State to prove that Dewberry was guilty of the victim's murder as alleged, the State was required to prove that: (1) Dewberry, (2) intended to cause serious bodily injury[2] to Dansby, (3) committed an act clearly dangerous to Dansby's life, and (4) that act caused the victim's death. TEX. PENAL CODE ANN. §§ 6.04(b)(2), 19.02(b)(2).

Here, the first two elements of the analysis are undisputed. In various interviews with police, Dewberry admitted having shot a gun at Dansby at the park that night. Dewberry concedes in his brief that "[i]t is likely that the evidence is legally sufficient to show that [Dewberry] intended to cause serious bodily injury to Dansby within the meaning of Texas Penal Code § 19.02(b)(2)."

If a defendant "intentionally discharg[es] a firearm toward a group of people," he demonstrates that "he was aware that someone could be killed or that serious bodily injury could result from his committing an act clearly dangerous to human life." *Pettigrew v. State*, 999

---

[2]"Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(46) (West Supp. 2012).

6

S.W.2d 810, 813 (Tex. App.—Tyler 1999, no pet.). Here, Dewberry fired a gun toward a group of people, and therefore, he committed an act clearly dangerous to human life.

The primary element in dispute is whether there is legally sufficient evidence from which a jury could find beyond a reasonable doubt that a shot fired by Dewberry caused Latasha's death. Here, the testimony was consistent that Dewberry and Dansby were shooting guns at one another. The .40 caliber shell casings were found in the area where Dansby and Brandon's car was located, and the nine millimeter casings and a .40 caliber bullet fragment were found in the area where witnesses placed Dewberry and Daly's automobile. Dansby and Hawkins both testified that Latasha was located behind Dansby (when viewed from Dewberry's location) at or near the time of the shooting. In an interview with Detective Scott Sartor, Demetrick Nard, another eyewitness, also indicated that Latasha was behind Dansby. Sartor testified that all four of the witnesses he interviewed were consistent that "the victim [was] right here behind Mr. Dansby." Three bloodstains[3] were found on the ground behind Dansby in the same area where witnesses remember having observed Latasha being located at that time.

The jury was free to believe the testimony that Dewberry used a semi-automatic handgun and reject Dewberry's statements that he had a .22 caliber revolver. Because the nine-millimeter shell casings were found in the same location from which witnesses saw Dewberry shooting a pistol, the jury could have reasonably inferred that the handgun Dewberry possessed was a nine-millimeter semi-automatic. The jury could also have believed the evidence that Latasha was located behind Dansby at the time of the gunfight, and the jury could likewise infer from the

---

[3]There was no forensic evidence indicating whose blood it was or whether it was human blood.

7

police diagrams and the location of the bloodstains in relation to the shell casings that the victim was in Dewberry's line of fire. Similarly, the jury was free to reject Tasby's testimony to the contrary.

From these facts, the jury could have reasonably inferred that one of the shots Dewberry fired in Dansby's direction missed Dansby and struck Latasha, causing her death. Accordingly, there is sufficient evidence supporting the verdict. We overrule this single point of error and affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     August 8, 2012
Date Decided:       September 6, 2012

Do Not Publish

8